[Crim. No. 27118. Second Dist., Div. Two. Aug. 20, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALFARO et al., Defendants and Appellants.

**Counsel**

Neal T. Wiener, under appointment by the Court of Appeal, Richard S. Buckley and Wilbur F. Littlefield, Public Defenders, Harold E. Shabo, Alan R. Adashek and A. Jane Fulton, Deputy Public Defenders, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**BEACH, J.—**

Nature of Case:

After trial by jury, defendants David Alfaro and Rita Vasquez[1] were found guilty of the crimes of forcible rape (Pen. Code, § 261, subd. 2) and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a).) Defendants appeal from the judgment of conviction.

The evidence in the light most favorable to the People as the prevailing party (*People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]) shows the following: On March 31, 1974, Licia, the 16-year-old victim, was at the apartment of Rachel, having stayed overnight. Later that same day Licia accompanied Rachel to the apartment of

---

[1] A third codefendant, Alfred Placencia, died before trial.

appellant Vasquez. Vasquez and several other people including Placencia and appellant Alfaro were there. Soon after arrival, Licia was left in the apartment alone because her friend Rachel fled after she and Licia were surrounded by a group of people at Vasquez's apartment. The group of people went from the Vasquez apartment to Alfaro's apartment. There, several of the group asked Licia if she wanted to be a member of the gang (known as Clover) to which they belonged. She refused and then the beating began. Appellant Alfaro pulled Licia's hair and threw her to the floor. Vasquez and another girl, Delores, beat and kicked Licia while she was on the floor. Alfaro and Placencia also kicked and beat her on the floor. Licia got up from the floor and fell on the bed. A male named "Baby Chico" threw a telephone and hit her in the head. Appellant Vasquez hit Licia's nose and broke it and made it bleed. Several of the assailants left the room leaving Licia with appellant Alfaro and Placencia. Shortly thereafter, appellant Vasquez opened the door and gave Alfaro a towel with which to wipe the blood off Licia's face. At that same instant, Licia saw her sister through the open door and yelled to her. Licia was crying at the time. The sister ran home and told her parents what was going on. In the meantime, after Vasquez gave Alfaro the towel, the door was closed and appellant Alfaro and Placencia raped Licia. They threw her against a door and on the floor. Placencia tore off Licia's clothes and had sexual intercourse with her while Alfaro held her mouth shut. They both demanded that she be quiet. Appellant Alfaro then raped Licia while Placencia held her and then once again Placencia began having intercourse with Licia. A doorbell rang downstairs and Licia heard appellant Vasquez call out that everything was okay because it was only Licia's brother. At that time, everyone, including Alfaro and Placencia, then ran downstairs, away from the apartment of Alfaro where the beating and rape had occurred. Licia's brother and father came in. A short while later, Licia's mother and father and some policemen came in and took Licia home. One of the police saw Licia at that time there at appellant Vasquez's apartment. Licia was crying and hysterical; she had facial injuries, and her clothes were torn and disheveled.

In their defense, appellants produced the testimony of a juvenile hall inmate, Lupe Lumelin, age 16, the girlfriend of Placencia's brother. She testified that while at juvenile hall, a few months after the incident, Licia told Lupe that Licia was a "Clover" gang member; that she, Licia, said she did not want to get the Clover members in trouble but that she had to "go to court" because of the coercion of her father. Additionally, as a

defense, Nancy Gomez (Lupe's sister and the mother of two of Placencia's children) testified that the victim's reputation for honesty was not very good.

APPELLANTS' CONTENTIONS:

1. The trial judge deprived them of their right of effective cross-examination.

2. The trial judge was guilty of misconduct.

3. Evidence of the victim's prior consistent statements was improperly admitted.

4. The jury should have been instructed on consent as a defense and on disturbing the peace.

DISCUSSION:

We reject appellants' contentions and we affirm the judgment.

1. *The trial court did not improperly restrict cross-examination by defense counsel.* ■ Appellants contend improper restriction of cross-examination of Licia Rosales concerning her residence, her family relationship, her parents' attitudes on sex, her mental state at the time she made the charges against appellant Alfaro, and her prior relationship with and opinion of appellant Alfaro. They also contend erroneous denial of cross-examination of prosecution witnesses concerning the victim, Licia's, residence.[2]

Appellants' argument is somewhat as follows: The defense was consent. Licia wanted to be a member of the Clover Gang. The initiation therein consisted of getting beaten and submitting to intercourse with one of the gang members. Therefore, the beating and rape of Licia was consensual. She did not want her father to know of her desire to join the Clover. She was a runaway and she feared her father. When caught in the act of initiation, she had to go along with her father's desire to prosecute defendants and therefore she feigned the beating received and the rape she endured.

[2]Appellant Vasquez does not cite any specific portion of the record of the trial herein in the argument portion of her brief in support of these assertions. In the statement of facts portion of her brief, appellant Vasquez has recited the trial testimony and proceedings in such a way that we are aware of what specific instances she complains.

It was to establish this defense that appellants claim the right to cross-examine beyond that permitted by the trial court. However, this was but a theory based upon sheer speculation of the foregoing being *possible* facts. No real offer of proof was ever made to support this theory. No evidence was presented from which such inference could be reasonably made. That it was just a speculative theory based on possibilities rather than known facts is demonstrated by defendant Vasquez's trial counsel's argument to the trial court on one occasion: that ". . . *if* any of her testimony is in *any way* related to any relationship that she may have had with her father . . . And *if* in fact she had not seen him for a while or *if* in fact she was a runaway, *if* in fact there was any problem between them . . ." (italics added), then further cross-examination beyond the scope of the direct should be allowed.

In light of this conjectural basis of defendant's theory, the seemingly strict rulings of the trial court proved to be legally correct. Cross-examination is limited to matters within the scope of the direct examination. (Evid. Code, §§ 761, 773, subd. (a).) While wide latitude may be permitted, the above statutes still govern the scope of cross-examination in California. (See, generally, discussion in Witkin, Cal. Evidence (2d ed. 1966) §§ 1202, 1204, pp. 1110-1112 et seq.; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

On cross-examination, Licia's friend Rachel testified Licia had stayed one night. Defense counsel's question to Rachel why Licia had stayed was objected to as beyond the scope of direct and the objection was correctly sustained. Direct testimony of Rachel related only to the visit by Rachel and Licia to appellant Vasquez's apartment next door the following day and the subsequent events. We are aware of the reasonable inferences under defendant's theory, if based on facts. Defendant hoped to show that Licia was unhappy at home, on bad terms with her father, and therefore had left home and was staying at Rachel's. Apparently, defendants believe that this would tend to show reason to fabricate. But this theory was without factual foundation. When pressed for assurance that this inquiry and theory were based on facts or a defense which it intended to present, the defense failed to present facts or any offer of proof to this effect. Even so, defendants were subsequently allowed cross-examination of the victim herself and other witnesses which disclosed that in fact Licia had been at her own home with her father and stepmother the day before and had spent the one night at Rachel's. Moreover, counsel were told by the trial court that if it later developed at

trial that the reason why she spent the night at Rachel's appeared relevant, defense counsel would be entitled to call back Rachel as a witness.[3] Defense counsel never availed themselves of this opportunity.

The length of Licia's visit with Rachel prior to the beating and rape was irrelevant to the matter in issue about which Rachel testified, i.e., that Licia was left at Vasquez's apartment. Whatever reason Licia had for staying overnight, Rachel, the witness, would not be competent to testify as to Licia's undisclosed state of mind. On direct, Rachel testified as to what occurred on the day of the assault and rape, not about Licia's frame of mind.

The matter of Licia's relationship with her family was again raised when defense counsel for appellant Vasquez asked Licia on cross-examination when was the last time she saw her father prior to the day of the crimes charged, and the prosecution objection to this question on the grounds that it was irrelevant and immaterial was sustained by the trial judge. It was after the sustaining of this objection that counsel for Vasquez made the statement that we have paraphrased above on page 421 hereof. It was not error to disallow this questioning on cross-examination. Again, we emphasize there was no offer of proof presented to the court to show that there was a basis in fact and merit in pursuing such inquiry. Furthermore, even if at that point the ruling had been unduly restrictive, the trial court later did in fact allow questions of Licia as to where she spent the night, when she last saw her father, whether she "had sex" with other boys at other times, and whether she discussed with her father any desire to belong to the Clover and whether or not she was afraid to discuss such things with her father. All of the answers clearly refuted appellants' theory and clearly demonstrated the lack of any solid information or other basis for appellants' theory.

Also contrary to appellants' assertions, questioning of Licia was permitted wherein it was disclosed that at one time she had wanted to join the Clover, twice previously she had seen appellant Alfaro, and once had a date with him.

■ When first seeking to pursue the issue of the victim's prior sexual experience against the People's objection of irrelevancy and that such

---

[3]Clearly, even without such a ruling or "reservation" of the right to recall Rachel, if the defense had wanted to call Rachel as its own witness during defendants' case in chief the defense was free to do so. However, up to that point, there had been only speculative suggestions.

question was beyond the scope of direct, appellants' counsel was asked by the court why the question was relevant. In reply, appellants' counsel stated "I am not going to disclose my information." In the absence of good faith representation to the court or offer of proof in reply to this fair question, appellant can hardly claim error in the ruling of the court sustaining the objection on the grounds of irrelevancy.

*Alford* v. *U.S.*, 282 U.S. 687 [75 L.Ed. 624, 51 S.Ct. 218], and *Smith* v. *Illinois*, 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748], cited by appellants as authority for the right to further cross-examination as to questions of how long Licia lived at Rachel's, are wholly inapposite. Those cases dealt with identity and addresses of witnesses who refused to disclose their identities and residences. No such issue was present here as to Licia. The appellants never called her as their own witness. █ The initial determination of questions of relevancy and admissibility is the duty of the trial court. We will not disturb the exercise of that duty absent a clear error of law or manifest abuse of the discretion with which that duty must be exercised.[4]

Appellant Vasquez states "Cross-examination is not limited by the scope of the direct examination in asking questions which relate to the witnesses' credibility . . ." and "a witness may be questioned about a matter not testified to on direct examination if that matter is relevant to attack the credibility of the witness and . . . objections that such questioning is beyond the scope of cross-examination *must be overruled.*" (Italics added.) In support, appellant Vasquez cites Evidence Code section 780 and *People* v. *Avelar*, 193 Cal.App.2d 631 [14 Cal.Rptr. 520].

█ Evidence Code section 780 says no such thing. It merely permits the jury to consider certain particular matters in testing the credibility of a witness. *It does not require that any and all questions relative to credibility be allowed on cross-examination.* Evidence Code sections 761 and 773, subdivision (a), still provide the basic guidelines to the exercise

---

[1]Evidence Code section 765 provides: "The court shall exercise reasonable control over the mode of interrogation of a witness so as (a) to make such interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and (b) to protect the witness from undue harassment or embarrassment."

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

See *Grudt* v. *City of Los Angeles*, 2 Cal.3d 575, 591 [86 Cal.Rptr. 465, 468 P.2d 825]; *People* v. *Tiner*, 11 Cal.App.3d 428, 434 [89 Cal.Rptr. 834].

of the court's discretion in the matter of the admissibility of evidence including evidence relative to credibility. Evidence Code section 780 was intended to continue the rule developed that the scope of the presentation of matters affecting credibility is in large measure within the discretion of the trial judge. It was not intended to and does not make mandatory the admission of such evidence. (See com. of Law Revision Commission to § 780, West's Evid. Code (1968 ed.) p. 151.) *People* v. *Avelar, supra,* is of no support or authority for appellants' broad assertion. In *People* v. *Avelar, supra,* the court held in affirming a statutory rape conviction that limitations upon cross-examination were not error even though wide latitude *should* be allowed in developing facts that show the basis of prejudice, interest, or bias on the part of a witness and therefore reflect on credibility. In *Avelar,* a witness had testified about a person's age. Defendants sought to show the bias and presumably thereby the unreliability of the witness. The person's age never became a disputed issue. The appellate court emphasized that there was no error in denying cross-examination relative to the bias where the offer of proof was highly *conjectural* and based on *possibilities* of what may develop or occur at trial. ■ Therefore, at bench as in *Avelar,* error, if any, was certainly nonprejudicial and nonreversible. Appellants' reliance upon *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], is also misplaced. *Johnson* merely held that cross-examination was "denied" by use of a prior inconsistent statement of a witness to prove the truth of the facts asserted by the witness under Evidence Code section 1235. That feature of *Johnson* which appellants seek to use in their argument was disapproved in *California* v. *Green,* 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]. The lesson of *Green* is that although it is important and crucial, all possible cross-examination need not immediately follow the direct evidence provided there is some reasonable means to later test the direct evidence. At bench, if appellant had entertained a good faith belief of bias, interest, or motive on the part of Licia, based on facts, they were free to call Licia as their witness later in the proceedings. They made no effort to do so.

2. *The trial court did not commit prejudicial misconduct.* Appellants raise numerous claims to support this contention. It would unduly prolong this decision to reiterate, answer, and discuss each claim. Suffice it to say that because of the serious allegations that the trial judge was prejudiced against the defendants and against their attorneys and caused an atmosphere of prejudice to prevail at the trial, we have read the entire transcript and record of these proceedings and have made careful

examination of the circumstances wherein each specified claim of error is said to have occurred and have studied the entire file in that light. From our reading of the entire record it appears that although at times the trial judge was strict, he was not unfair or prejudiced. ■ It is the duty of the trial judge to keep the trial within bounds of the issues and not permit the questioning to wander off on collateral matters. The idea that trial courts should "lean over backwards" or "err on the side of caution" in favor of defendants in criminal cases is often advanced but is not required by case law or statute. Frequently when in doubt as to what a ruling should be, courts have been liberal in allowing defendants in criminal cases much latitude in questioning and have assigned the foregoing as reason for doing so. Such practice of course makes it appear that by comparison a judge who is in firm control of the case, who well knows the answers to legal questions posed, and who decides on strict but proper legal grounds for his rulings appears to be severe. Hence he is easily accused of bias and prejudice against defendants. Both the People and the defendants are entitled to a fair trial, but neither side is entitled to advance or present purely conjectural theories and engage in search at trial for possible support for such theories.

■ We see no error in the refusal several times of the trial court to permit counsel for defendants to approach the bench as requested to argue points of law or argue further about rulings made. ■ As to the appellants' claims of improper remarks and prejudicial favoritism, there is no merit in appellants' claim. The "disparaging remarks" of which appellants complain were simply remarks that the trial court is entitled to make about improper questions. Some were explanations by the court why questions were irrelevant and how questions might be better phrased. The same kind of conduct that appellants claim as "interruption" of their examination they label as "assistance" to the deputy district attorney when the court did the same thing to the deputy district attorney. In our reading, it appeared that the trial court very well conducted the trial, kept it within the proper bounds, treated both the People and appellants with equal firmness, and advised them equally when they erred.

At one point in the trial, counsel for appellant Vasquez threw up his hands, no doubt in dismay and despair in his thwarted efforts to proceed along certain inquiry. This resulted in remarks of the trial court that such conduct was improper and childlike. While feelings of hopelessness and frustration may be understandable in a difficult case, it does not justify such theatrics even if not intended to be theatrical. Such an act by

counsel indicated exasperation with the judge and was contemptuous and improper. It was destined to result in the immediate reproval by the court.

■ Another claim of error consists in the remarks about one of trial counsel's delay in arriving at one of the sessions of court. While perhaps unnecessary and not requiring the court to explain to the jury how much it costs per day to conduct a criminal trial, the remarks were not outrageous or intemperate. Counsel was able to explain the reason for his delay in front of the jury. ■ Another claimed act of prejudice occurred in examination of Dr. Nazif, a medical witness. He was asked by defense counsel if the victim's nose was bruised or puffy when he saw her. To that question the court added "or broken?" It was not error to do so. That is undisputedly exactly what happened to the victim, and was her condition at the time of examination. The court may ask questions of its own and may enlarge or limit on other questions to seek the truth. The court here did not "take over" the questioning or "align itself" with the prosecution.

■ During trial, the court said that if it was in error in ruling on certain matters, counsel for defendant could "take it up on appeal" or "tell it to the Court of Appeals." We agree with appellants that such remarks were inappropriate. These remarks have the possible risk of giving a jury a cue from the judge of his opinion of certainty of guilt. However, we do not believe in this case such error was prejudicial or that such danger existed. Of the three remarks of this nature made by the trial court, only one was made in the jury's presence. In a case where the evidence is close, one such remark could be prejudicial. But at bench the case was not a close case. The jury could hardly have been persuaded by the one such remark in view of the evidence presented to it. The evidence of guilt was overwhelming. The evidence of the beatings, the kicking, the assault, the striking with the telephone, and the rape were undisputed. No one ever testified that such did not take place. The only defense advanced was the theory of consent. Even the testimony of the defense witnesses did not negate the activity testified to wherein the battery and assault and rape took place. The most that could be said shown by defense testimony was that the victim was pursuing the role of complaining witness because of her father's wish to press the charges. The defense did not show nor prove nor present any evidence that the charges were fabricated. Thus the defense of consent was an implausible defense and theory in view of the undisputed evidence of the torn clothes, the torn pants, the bruised and beaten face, the kicked body, the

broken and bleeding nose, and the ruptured hymen. There was no real issue or question of believability between witnesses as to whether or not the acts testified to occurred. The sole hope relied upon by defendants was that the jury might somehow infer and speculate that there was a consent to all of this brutal conduct. There was, however, no evidence of consent.

The conduct of the trial judge was not prejudicial, improper or intemperate. Not only *may* he join in questioning and take part in the determination of the truth (*People* v. *Rigney,* 55 Cal.2d 236 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; *People* v. *Donovan,* 272 Cal.App.2d 413, 421 [77 Cal.Rptr. 285]; Evid. Code, § 775), but he has a duty to see that both sides receive a fair trial and that justice is done. (*People* v. *Bowman,* 240 Cal.App.2d 358, 382 [49 Cal.Rptr. 772], Evid. Code, § 765.) The remarks of the court were not in the slightest like the inappropriate and very intemperate remarks in cases relied upon by appellants. (See *People* v. *Zammora,* 66 Cal.App.2d 166 [152 P.2d 180]; *People* v. *Black,* 150 Cal.App.2d 494 [310 P.2d 472]; *People* v. *Campbell,* 162 Cal.App.2d 776 [329 P.2d 82].)

██ Another claim of judicial misconduct relates to the court's allowing the prosecution to question "as its own witness" the defense witness Lupe Lumelin after defense had finished questioning her. The trial court had denied a previous similar request by defense to reopen cross-examination of prosecution witness Licia. This is claimed as "an unequal ruling." This claim is without merit. The trial court allowed the prosecution to "call" Lupe as its own witness because Lupe was several months pregnant; it was a matter of convenience to the court and to the witness. The trial court indicated that she might not have been able to be called later as a rebuttal witness because of her pregnancy. The testimony elicited from Lupe thus was that she was Tommy Placencia's girlfriend and Tommy was Alfred's brother. This was direct testimony and not reopening of cross-examination.

██ Licia shortly after the occurrence of the crimes told one of the police that she had been attacked by three men, but that she did not think the third one ever succeeded in having sexual intercourse with her. Dr. Nazif was permitted over objection to testify to the effect that when he examined Licia about two to four hours later she told him that two boys had sexual intercourse with her. The court allowed Dr. Nazif so to testify pursuant to Evidence Code section 791, subdivision (a). Appel-

lants correctly point out that Licia's prior consistent statement as made to Dr. Nazif regarding who attacked her (1) was not made before but after her inconsistent statement to Officer Kahl that she had been attacked by three boys, and (2) was not made before but after her alleged bias or motive to fabricate arose.

With the testimony thus viewed, appellants are seemingly correct in asserting that evidence of Licia's prior consistent statement was inadmissible under Evidence Code section 791, subdivision (a) because her prior consistent statement as related by Dr. Nazif was made after rather than before her statement to Officer Kahl which was inconsistent with her testimony at the trial as to who attacked her. However, even if evidence of Licia's prior consistent statement was inadmissible at the time Dr. Nazif testified to it, evidence of the statement would have been admissible in rebuttal under Evidence Code section 791 after Lupe Lumelin testified, since Miss Lumelin's testimony was intended to demonstrate a possible motive for fabrication or bias on the part of Licia which only developed after Licia made the prior consistent statement to Dr. Nazif, i.e., Licia allegedly told Lupe while they were both in juvenile hall about one month after the crimes charged that her (Licia's) father had told her she had to testify in court or he would put her and her little sister in a foster home and she feared that the only way she could get out of juvenile hall was to appear in court and testify. It was proper rehabilitative evidence. (*People* v. *Cannady,* 8 Cal.3d 379, 386-388 [105 Cal.Rptr. 129, 503 P.2d 585].) The only error, that it might have been presented before it was needed (if tested under Evid. Code, § 791, subd. (a),) was cured by later testimony of Lupe.

Moreover, Licia's prior consistent statement was admissible on other grounds. Licia made the statement to Dr. Nazif only a few hours after the rapes and assault occurred. In a rape prosecution, it is permissible to introduce testimony of a witness as to statements made by the victim shortly after the rape which relate to the nature of the offense and the identity of the person or persons who raped the victim. (*People* v. *Burton,* 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Brown,* 35 Cal.App.3d 317, 323-324 [110 Cal.Rptr. 854]; *People* v. *Hernandez,* 18 Cal.App.3d 651, 658 [96 Cal.Rptr. 71].) Licia's statement to Dr. Nazif was made only a few hours after the crimes charged.

When Officer Kahl interviewed Licia, she was hysterical and crying and appeared to be frightened. Appellant Vasquez was present when

Officer Kahl first questioned Licia and attempted to answer for Licia. There was some question in Officer Kahl's mind if he put down the correct name when he used the name "Joker." This confusion was not due to inconsistent remarks of the victim but as explained by the officer by use of "so many nicknames," the butting in of appellant Vasquez, and the difficulty of recording all that is said following a rape.

4. *Instructions on consent as a defense to assault and on disturbing the peace.* ■■■ Appellant Alfaro contends the trial court erred by refusing to give a jury instruction to the effect that the victim's consent is a defense to a charge of assault. Appellants also both contend that the trial court erred by refusing to give jury instructions to the effect that they could be found guilty of disturbing the peace. The trial court correctly refused to give such jury instructions.

Consent is not a defense to an assault that results in great bodily injury. (*People* v. *Samuels,* 250 Cal.App.2d 501, 513-514 [58 Cal.Rptr. 439]; 1 Witkin, Cal. Crimes (1963) at p. 163.)

*People* v. *Gordon,* 70 Cal. 467 [11 P. 762], cited by appellant Alfaro, is distinguishable. It did not deal with an assault necessarily resulting in great bodily injury to the victim, but rather an assault with the intent to commit rape. Consent is a defense to a charge of rape. (See Pen. Code, § 261; 1 Witkin, Cal. Crimes, *supra,* at p. 164; *People* v. *Samuels,* 250 Cal.App.2d 501, 513-514 [58 Cal.Rptr. 439].)

There is no authority for, and we see no merit in, appellants' contention that disturbing the peace (Pen. Code, § 415) is a necessarily included offense in the crimes charged herein. There was no error in refusing an instruction based on such a proposition.

The judgments of conviction are affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied September 15, 1976, and appellants' petitions for a hearing by the Supreme Court were denied October 28, 1976.