[Crim. No. 20604. Aug. 20, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN P. BELLECI, Defendant and Appellant.

880

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, Clifton R. Jeffers, Chief Assistant State Public Defender, and B. E. Bergesen III, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant was charged by information with two counts of possession for sale of phencyclidine, a restricted dangerous drug. (Health & Saf. Code, § 11378.) The incidents were unconnected, and occurred on June 11, 1976 (count I), and January 22, 1977 (count II). Defendant pleaded not guilty to both charges, and filed a timely motion to suppress the evidence on count II on the ground that it had been obtained by illegal search and seizure. (Pen. Code, § 1538.5.) The motion was granted, and the court ordered that all evidence on count II be suppressed; the prosecution did not seek to review the ruling, and count II was subsequently dismissed. Defendant then withdrew his plea of not guilty to count I and entered a guilty plea thereto, and the matter was referred to the probation department for a presentence report.

When that report was made available, however, it included a detailed statement of the prosecution's evidence on count II even though the court had ordered that evidence suppressed. In his evaluation of the case, moreover, the probation officer drew adverse inferences from the "fact" that defendant was found in possession of contraband "on two separate occasions, approximately six months apart," and relied on that evidence in recommending that probation be denied and defendant be committed instead to the California Youth Authority.[1]

Defendant moved to strike those portions of the presentence report discussing the previously suppressed evidence and to resubmit the matter to the probation department for reconsideration without reference to that evidence. The prosecution vigorously opposed the motion, and after argument it was denied.[2] The court thereupon denied probation and committed defendant to the Youth Authority.

Defendant appeals from the judgment, challenging only the events following entry of his plea. (Cal. Rules of Court, rule 31(d).) In particular, he contends the trial court committed prejudicial error in admitting, at the sentencing hearing, evidence that had previously been ordered suppressed. He asks that we hold all evidence obtained by illegal search and seizure to be inadmissible at sentencing hearings, either on constitu-- tional grounds or as a judicially declared rule of evidence. As will appear,

---

[1] Defendant was 20 years of age at the time.

[2] The judge who ruled on the motion to strike and resubmit was not the judge who had earlier granted defendant's motion to suppress the evidence.

however, the disposition of this appeal is governed by statute, and it would therefore be inappropriate for us to reach at this time the broader issues raised by defendant.

We need not be detained by the Attorney General's preliminary claim that the evidence on count II was not illegally obtained. As noted, the superior court ruled to the contrary in granting defendant's motion to suppress. The Attorney General had two opportunities for timely review of that ruling: he could have promptly filed a petition for writ of mandate or prohibition (Pen. Code, § 1538.5, subd. (o)), or he could have appealed from the subsequent order dismissing count II on this ground (*id.,* § 1238, subds. (a)(7) and (c)). But neither step was taken; indeed, at the hearing on defendant's change of plea the district attorney expressly declared "It's not my intent to appeal" from the order granting the motion to suppress. In the circumstances the Attorney General must be deemed to have waived his right to seek judicial review, and cannot be allowed to reopen the question on this appeal by defendant.

■ Turning to the merits, we find that the issue of the admissibility of this evidence at the sentencing hearing is resolved by the statute itself. Subdivision (d) of section 1538.5 declares that "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing" unless the People seek reconsideration of the ruling by invoking other provisions of the section or by appeal. No such review was sought, and the question therefore is whether the sentencing proceeding is a "hearing" within the meaning of this statute.

The sentencing phase of a prosecution is a proceeding in which the court (1) rules on any claim in arrest of judgment, (2) receives and considers the probation or diagnostic reports or statements in aggravation or mitigation, (3) listens to argument, and may receive evidence, on the suitability of probation or on the appropriate term of imprisonment, and (4) determines whether to impose sentence and if so the proper punishment within the limits fixed by law. (See Pen. Code, §§ 1170 et seq., 1203 et seq.; Cal. Rules of Court, rule 433.) It cannot seriously be doubted that such a proceeding is a "hearing" in every customary sense of the word, and the relevant statutes and rules repeatedly so describe it.[3]

---

[3]Thus the probation statute (Pen. Code, § 1203, subd. (a)) provides in pertinent part that the presentence report "shall be made available to the court and the prosecuting and defense attorneys at least nine days prior to the time fixed by the court for the *hearing* and determination of the report, and shall be filed with the clerk of the court as a record in the case at the time of the *hearing.* . . . At a time fixed by the court, the court *shall hear* and

■ It is settled that " 'We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.]' " (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) Stated otherwise, "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; accord, *People* v. *Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484]; *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results. (See, e.g., *Younger* v. *Superior Court (Mack)* (1978) 21 Cal.3d 102, 113-114 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].) Neither consequence is threatened here.

First, the broad goal of the Legislature in enacting section 1538.5 was to provide an orderly and unified procedure for (1) making pretrial challenges to the admission of evidence on the ground that it was the product of an unconstitutional search or seizure and (2) obtaining prompt appellate review of the rulings of the lower courts on such challenges. (See 22 Assem. Interim Com. Rep. (1965-1967) No. 12, Search and Seizure, pp. 13-22, 2 Appen. to Assem. J. (1967 Reg. Sess.); *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202]; *Moreno* v. *Superior Court* (1978) 80 Cal.App.3d 932, 935-936 [146 Cal.Rptr. 25]; *Cornelius* v. *Superior Court* (1972) 25 Cal.App.3d 581, 585 [102 Cal.Rptr. 59]; *Nerell* v. *Superior Court* (1971) 20 Cal.App.3d 593, 597 [97 Cal.Rptr. 702]; *Kirby* v. *Superior Court* (1970) 8 Cal.App.3d 591, 596-597 [87 Cal.Rptr. 77].) It in no way frustrates that purpose to provide that the corollary of a successful motion to suppress shall be to bar the People from thereafter introducing the illegal evidence either at the trial

---

determine the application, if one has been made, or, in any case, the suitability of probation in the particular case. At the *hearing,* the court shall consider any report of the probation officer and shall make a statement that it has considered such report that shall be filed with the clerk of the court as a record in the case." (Italics added.)

The new sentencing statute (*id.,* § 1170, subd. (b)) likewise recites that in determining the appropriate term of imprisonment the court may consider various documents on file "and any further evidence introduced at *the sentencing hearing.*" (Italics added.)

A principal rule of court on sentencing procedure (rule 433(a)) directs that "In every case, at the time set for sentencing . . . , the sentencing judge *shall hold a hearing*" on the matters listed hereinabove. (Italics added.)

or, if the defendant is convicted, at his sentencing hearing. On the contrary, it *would* effectively nullify the statutory intent if, after the defendant secured a court order suppressing such evidence and the People failed to seek appellate review, the prosecution were nevertheless allowed to use that same evidence against him in subsequent proceedings: although the legislation is procedural in nature, its elaborate mechanism would obviously be superfluous if the result of invoking it were such a Pyrrhic victory.

The Attorney General advances three additional contentions relating to legislative intent, but none is meritorious. First he proposes his own construction of subdivision (d), to wit, that the provision is intended merely to foreclose the prosecution from relitigating the legality of a search or seizure at the trial level after the issue has been determined adversely to it in a pretrial hearing. Under this view the phrase "any trial or other hearing" in subdivision (d) means only a trial-level suppression proceeding at which, but for this provision, the People could litigate the search issue de novo.

The construction is both historically and analytically unconvincing. Nothing in the legislative history of section 1538.5 supports this restrictive reading; on the contrary, it appears that from the very beginning of the enactment process the purpose of the language in question was simply to round out the picture by providing what should be done with the illegally obtained property or evidence in the event the motion to suppress is granted. Thus in the early versions of the statute the prohibition against use of the evidence at trial was joined with a directive to return the property to the defendant if that could lawfully be done. These two provisions were eventually separated, but only as part of a reorganization of the statute from nine subdivisions into fifteen. Thereafter subdivision (d) was slowly expanded for purposes of clarity and completeness, and the addition of the phrase "or other hearing" was seemingly just one more step in that routine process.[4]

---

[4]The first version of the legislation that became section 1538.5 was Assembly Bill No. 1651 (1965 Reg. Sess.), introduced by then-Assemblyman Deukmejian. The bill provided in relevant part that "If the motion [to suppress] is granted, the property shall be restored, unless otherwise subject to lawful detention, and it shall not be admissible in evidence against the movant at any trial." Assembly Bill No. 1651 was not enacted in that session, and the matter was referred to the Assembly Interim Committee on Criminal Procedure for study.

At the next session of the Legislature a substantially similar proposal was introduced as Senate Bill No. 88 by then-Senator Deukmejian and others. In its original form (Jan. 19, 1967) subdivision (c) of section 1538.5 included a sentence identical to that quoted above from Assembly Bill No. 1651, with the addition of the clause "unless further proceedings authorized by law are utilized by the people." On March 13, 1967, the sentence was

Nor does the Attorney General's claimed construction fit the present wording of subdivision (d). If his view were correct the subdivision should have recited that when a motion to suppress is granted and the People do not seek appellate review, "the ruling shall be binding on the people" or "the people shall not be entitled to relitigate the validity of the search or seizure" at trial or other hearing; the Legislature could easily have so provided, as it used similar language elsewhere in the statute. (See Pen. Code, § 1538.5, subds. (i) and (j).) Instead, subdivision (d) declares that in such circumstances "the property or evidence [ordered suppressed] shall not be admissible against the movant . . . ." But for property to be "admissible against" the defendant at a trial or hearing means that the People offer it in evidence to prove the defendant's guilt or other controverted issue. Manifestly the purpose of a suppression hearing is not to prove guilt but to determine whether a challenged item of evidence will be "admissible against" the defendant in a forthcoming trial on the merits, and for this reason the prosecutor does not "offer it in evidence" at such hearing.

■ In any event, even if the Attorney General's construction were plausible it would not be controlling: "When the legislative history thus gives rise to conflicting inferences, it does not justify departing from the plain language of the statute. Moreover, even if that language were reasonably susceptible of different interpretations, the construction more favorable to the defendant should be adopted. [Citation.] On both grounds, therefore, the contention of the Attorney General must be rejected." (Fn. omitted.) (*People* v. *Boyd* (1979) *supra,* 24 Cal.3d 285, 295.)

The Attorney General next posits that it is a judicial function to determine whether the exclusionary rule should apply in a proceeding other than a criminal trial, and that such determination is made in light of the policies underlying the rule and the nature and purposes of the proceeding in question. (See, e.g., *United States* v. *Calandra* (1974) 414

amended to substitute "the evidence" for the word "it." In a substantial reorganization of the statute on July 5 the two parts of the sentence were separated: the directive to return the property to the defendant was placed in a new subdivision (e), and the prohibition against use of the evidence at trial became new subdivision (d); at the same time the latter provision was slightly reworded to read, "If a search or seizure motion is granted, the property or evidence shall not be admissible against the movant at any trial unless further proceedings authorized by this section are utilized by the people."

The amendment process continued in normal fashion. On July 13 subdivision (d) was again amended to add the words "or Section 1238"; on July 21 it was amended to add "pursuant to the proceedings authorized by this section" and "or Section 1466"; and on July 26 it was amended to add "or other hearing."

U.S. 338, 349-352 [38 L.Ed.2d 561, 572-573, 94 S.Ct. 613] [grand jury proceedings]; *In re Martinez* (1970) 1 Cal.3d 641, 648 [83 Cal.Rptr. 382, 463 P.2d 734] [parole revocation hearing].) He concludes therefrom that by enacting subdivision (d) the Legislature "did not attempt to preempt" that judicial function, that subdivision (d) was not intended to be a "statutory exclusionary rule," and hence that his own interpretation of its purpose is correct.

The premises are sound, but the conclusions are flawed. ■ The Attorney General exaggerates the reach of subdivision (d): it does not make *all* illegally obtained evidence inadmissible "at any trial or other hearing," but only such evidence as has been the subject of a motion to suppress "granted pursuant to the proceedings authorized by this section," i.e., section 1538.5. To that extent alone, the Legislature has "preempted" the above-stated judicial function and enacted a "statutory exclusionary rule." But it is perfectly proper for the Legislature to enact such rules, i.e., to provide by statute that certain evidence, although relevant, shall be inadmissible for reasons of public policy. (Evid. Code, § 351.)[5]

The Attorney General also seeks significance in an asserted "legislative silence" in face of subsequent judicial decisions recognizing that illegally obtained evidence may be admissible at trial for limited impeachment purposes (*People* v. *Taylor* (1972) 8 Cal.3d 174, 179-182 [104 Cal.Rptr. 350, 501 P.2d 918], (at probation revocation hearings (see, e.g., *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609-611 [86 Cal.Rptr. 726]), and at parole revocation hearings (*In re Martinez* (1970) *supra,* 1 Cal.3d 641, 648-651). The contention fails for three reasons. ■ As we have explained elsewhere, the inference of implied approval by the Legislature is weakest when that body has not reenacted or rewritten the statute in question but has "simply not spoken on the subject during the intervening years." (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) Secondly, in none of the cases relied on by the Attorney General was the illegally obtained evidence the subject of a motion to suppress granted pursuant to section 1538.5; as shown above,

---

[5]Indeed, in the same session in which it adopted section 1538.5 the Legislature enacted another statutory exclusionary rule similar to that here in issue. Subdivision (a) of Penal Code section 631 makes wiretapping an offense, and subdivision (c) thereof declares that "Except as proof in an action or prosecution for violation of this section, no evidence obtained in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding." The Attorney General attempts to distinguish the latter statute on the ground its language is "quite specific," but we find this a distinction of degree rather than of kind.

such evidence was therefore not within the scope of subdivision (d) in any event. Thirdly, in none of those same decisions did the court address the issue now before us, "and cases, of course, are not authority for propositions not there considered." (*People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241], and cases cited.)

Finally, the Attorney General contends the plain meaning of subdivision (d) should be disregarded because it would lead to an allegedly "absurd" result, i.e., that prosecutors would avoid the effect of subdivision (d) by simply withholding illegally obtained evidence until the sentencing (or probation revocation) hearing.[6] Yet this result could be "absurd" only if the Legislature intended subdivision (d) to serve as a general exclusionary rule making all illegally obtained evidence inadmissible; as explained above, its purpose is considerably more modest. Moreover, the result could ensue only if prosecutors had it in their power to thus "withhold" illegally obtained evidence; but under section 1538.5 the defendant has both the right and the responsibility to move before trial to suppress or return any known item of evidence that he believes was obtained by unlawful search or seizure, whether or not that evidence is the basis of a pending charge against him. As to evidence or grounds of which the defendant is unaware, the contention assumes that prosecutors will routinely choose to defeat the defendant's right to a timely judicial determination of the constitutional issue raised by a motion to suppress;[7] we are unwilling to believe that prosecutors, who are officers of the court, will engage in such wholesale efforts to frustrate the spirit and purpose of the law.

■ It follows that the evidence relating to count II of the information herein, which was the subject of a final order granting defendant's pretrial motion to suppress under subdivision (i) of section 1538.5, was rendered inadmissible at defendant's sentencing hearing by the terms of subdivision (d) of the same statute, and should have been stricken from the presentence report.

---

[6]The Attorney General proposes two scenarios. In the first, a prosecutor has evidence that a defendant has committed two crimes but doubts the admissibility of the evidence on one of them. He therefore refrains from charging that crime; and when the defendant is convicted of the other, he introduces the doubtful evidence at the ensuing sentencing hearing. In the second hypothetical, a prosecutor has evidence of a crime committed by a probationer but doubts its admissibility; he therefore conducts the probation revocation proceedings—and introduces the doubtful evidence—before charging the new crime.

[7]It also assumes, in the Attorney General's hypothetical case of probation revocation (fn. 6, *ante*), that prosecutors will routinely disregard our recent admonition that the "most desirable method" of handling such cases is to refrain from initiating revocation proceedings until the related criminal prosecution is completed. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 896 [120 Cal.Rptr. 384, 533 P.2d 1024].)

There is no doubt that on the facts of this case the error was prejudicial. (See *People* v. *Parham* (1963) 60 Cal.2d 378, 385-386 [33 Cal.Rptr. 497, 384 P.2d 1001].) It is plain that the introduction of the suppressed evidence on count II at the sentencing hearing directly resulted in the denial of probation and the imposition of the more severe punishment on defendant: the trial court candidly stated "for the record" that it would "strongly consider" granting probation in this case "but for the additional factor of the defendant's later involvement with controlled substances, as demonstrated by Count 2, indicating to the Court that the defendant is developing a history of criminality"; and the court concluded that commitment to the Youth Authority was the more appropriate sentence "in view of that total history, both Count 1 and Count 2 . . . ."

The judgment is reversed with directions to resentence defendant in accordance with the views expressed herein.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.