[No. A019439. First Dist., Div. Two. Aug. 16, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES E. JOHNSON, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**Counsel**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and David R. Feld, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**Opinion**

**ROUSE, J.—**

### Statement of the Case

In 1979, defendant pleaded guilty to a charge of burglary (Pen. Code, § 459). The imposition of sentence was suspended and defendant was placed on probation. While on probation, defendant was arrested for robbery (Pen. Code, § 211). As a result, the People moved to revoke his probation. Defendant moved to continue the revocation hearing until after the trial on the robbery charge. That motion was denied. After a hearing, his probation was revoked. Defendant was then sentenced to prison for the upper term of three years for the original burglary. He now appeals from the order revoking

probation and the judgment of conviction and sentence on the 1979 burglary charge.

*Statement of Facts*

On October 3, 1981, just after 1 o'clock in the afternoon, 83-year-old Jessie Brooks was walking on Mission Street back to his hotel room, located at 2072 Mission Street in San Francisco. A man followed him into the hotel and up the stairs and then attacked him, trying to take from him a red purse and a green checkbook folder containing $30. Mr. Brooks wrestled with the assailant for a while and then screamed out that he was being robbed.

Mr. William Tang, manager of the hotel, was at work in his retail store downstairs from the hotel, when he heard noises from above. He saw one man run out of the hotel. He told his wife to take care of the store and went upstairs to see what was happening. At the top of the stairs he saw the back of a man, whom he later identified as defendant, and Mr. Brooks. Mr. Brooks was holding onto defendant's clothing, trying to prevent his escape. Mr. Tang saw defendant holding a red purse and a green folder. He asked defendant why he was there and why he had taken Mr. Brooks' things. Defendant replied that Brooks owed him money. Mr. Tang said that Brooks did not owe money to anyone and then tried to grab the objects from defendant. Defendant dropped the objects and grabbed Mr. Tang by the wrist, then turned and ran out. Mr. Tang immediately went downstairs and called the police. He then returned to Mr. Brooks, who was breathing heavily.

At the preliminary hearing, Mr. Brooks was unable to positively identify defendant as his assailant. However, as noted above, Mr. Tang did identify defendant as the robber.

## I.

Defendant contends that the court erred when it denied his motion to continue the probation revocation hearing until after the trial on the robbery charge. He argues that the court failed to exercise its discretion on the motion and that it ruled erroneously on the merits of the motion itself.

We need not determine (1) whether the court failed to exercise its discretion; or (2) assuming, arguendo, that the court failed to exercise its discretion, whether such a failure by itself requires reversal, because we conclude that defendant was not prejudiced by the denial of his motion, and therefore any alleged error was harmless.

██ Defendant argues that the revocation hearing should have been continued because having it prior to the trial on the robbery charge unfairly

placed him on the horns of a dilemma. He either had to let the prosecutor present testimony about the robbery and remain mute himself, except for cross-examination of the prosecution witnesses, and thereby run a substantial risk that his probation would be revoked; or he had to present his defense to the robbery charge, thereby giving the district attorney the opportunity to understand the defense theory of the case and to cross-examine defense witnesses, including defendant. Defendant argues that, in either case, he is compelled to give up constitutional rights.

In *People* v. *Jasper* (1983) 33 Cal.3d 931 [191 Cal.Rptr. 648, 663 P.2d 206], the California Supreme Court rejected this argument. In *Jasper,* as here, defendant's motion to continue the revocation hearing was denied and his probation was revoked. On appeal, he argued that by having the revocation hearing before the trial on the new charges, "he was improperly forced to choose between exercising his right to remain silent at the revocation hearing, thereby risking the revocation of his probation, and presenting a defense to revocation, thereby providing the People with pretrial 'discovery' regarding the theory and details of his defense to the [new charges against him]." (*Id.,* at p. 933.) At the revocation hearing defendant declined to testify or offer any defense to revocation.

The Supreme Court affirmed the revocation of defendant's probation. First, the court noted that defendant's constitutional rights were adequately protected by the exclusionary rule, created in *People* v. *Coleman* (1975) 13 Cal.3d 867, 888-889 [120 Cal.Rptr. 384, 533 P.2d 1024], which precludes the subsequent prosecutorial use of a probationer's testimony or its fruits at the trial on new charges. (*Jasper, supra,* 33 Cal.3d at pp. 933-934.) Second, the court pointed out that there was no authority for the proposition that conducting revocation hearings before trials is a per se violation of a probationer/defendant's constitutional rights, noting that "our independent research indicates that the opposite [i.e., no violation of the Constitution in conducting the revocation hearing first] may be true." (*Id.,* at p. 934.) And, finally, the court found that a probationer's testimony and that of his witnesses was not the equivalent of pretrial discovery procedures to compel disclosure of incriminating evidence. (*Ibid.*) Thus it appears that the "tactical" prejudice that may result from having to present evidence and testimony in defense of a motion to revoke probation is not sufficient to mandate that revocation hearings be continued until after trial.

In light of *Jasper* and *Coleman,* we find no reason to disturb the court's ruling on defendant's motion to continue and the People's motion to revoke probation.

## II.

■ Defendant contends that the trial court committed reversible error by improperly restricting the cross-examination of Mr. Tang, the key prosecution witness. He claims that the court erred in sustaining the prosecution's objections when defense counsel asked Mr. Tang (1) whether he ran a "fencing operation" out of his retail store; (2) whether he "charge[d] working prostitutes money to enter [his] hotel"; and (3) whether he had "contact" with officers in the vice squad. Defendant argues that evidence that Mr. Tang was involved in illegal activities was relevant (and therefore admissible) to show that Mr. Tang had a motive to fabricate his testimony.

Under section 780, subdivision (f), of the Evidence Code, evidence concerning the alleged existence of a witness' motive to fabricate testimony is admissible to attack his credibility.[1] Evidence of such a motive may properly include specific acts and conduct of the witness. (See, e.g., *People* v. *Mascarenas* (1971) 21 Cal.App.3d 660 [98 Cal.Rptr. 728] [error not to admit evidence that key prosecution witness had made false charges against another and had stolen property].) However, section 780 does not require that all questions relating to a witness' credibility be allowed on cross-examination; nor does it mandate the admission of all evidence offered to show a motive to fabricate. (See *People* v. *Alfaro* (1976) 61 Cal.App.3d 414, 423-424 [132 Cal.Rptr. 356].) Evidence of a witness' conduct must *unequivocally* point to a possible motive to fabricate testimony before it is admissible. (See *People* v. *Allen* (1978) 77 Cal.App.3d 924, 933 [144 Cal.Rptr. 6].) Moreover, evidence of such a motive need not be admitted where the theory behind the alleged motive to fabricate is highly tenuous, speculative, conjectural or based on "possibilities." (See *People* v. *Avelar* (1961) 193 Cal.App.2d 631, 634-635 [14 Cal.Rptr. 520]; see also *People* v. *Alfaro, supra,* 61 Cal.App.3d 414, 424.)

Defendant's theory appears to be that Mr. Tang's allegedly illegal conduct provided him with a motive to testify in conformity with what the police wanted to hear because in doing so he would "please" the police. Defendant is vague concerning *why* Mr. Tang would want to "please" the police. The implication, however, is that his alleged criminal conduct would somehow be better protected against police investigation and that he personally would somehow be better insulated against arrest. This theory is tenuous, speculative, and unreasonable.

---

[1]Section 780 of the Evidence Code provides, in pertinent part: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] (f) The existence or nonexistence of a bias, interest, or other motive."

There is no indication that Mr. Tang was being investigated for any alleged criminal activities such that he might hope to favorably influence that investigation by cooperating with the police and prosecution in this case. He had nothing to gain from the police or the district attorney by fabricating his testimony, therefore, we find no potential motive to do so arising from his alleged criminal conduct.

Defendant also suggests that Mr. Tang would want to testify falsely to protect himself against the defendant, who might have known about his alleged illegal activities. This theory is absurd. If Mr. Tang feared that defendant would tell the police about his alleged criminal conduct, such a fear would provide a motive to *help*, not hurt, defendant. Indeed, the fact that Mr. Tang became the key prosecution witness suggests that he had nothing to hide from the police and nothing to fear from defendant.

We find no abuse of discretion by the trial court when it prevented defense counsel from asking Mr. Tang whether he was engaged in criminal activities.[2] Absent such a finding, we decline to disturb the trial court's ruling on the motion to revoke probation. (See *People* v. *Alfaro, supra,* 61 Cal.App.3d 414, 423.) Moreover, in light of the strength of Mr. Tang's testimony concerning the robbery, his identification of defendant as the robber, and, finally, the fact that he was cross-examined twice, once at the preliminary hearing and again at the revocation hearing, we cannot conclude that the allegedly erroneous exclusion of evidence resulted in a miscarriage of justice or that the admission of such evidence would have resulted in a different ruling on the motion to revoke defendant's probation. (Art. VI, § 13, Cal. Const.; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### III.

■ Defendant claims that the judgment must be reversed because in the supplemental probation report defendant was accused of engaging in a pattern of attacks on Mr. Brooks when there were no substantial facts to support such an accusation.

The supplemental probation report contained the following paragraph: "It is this Probation's Officer's impression, gathered from statements made by the defendant during an interview at the County Jail on October 16, 1981,

---

[2]We have some difficulty believing that defense counsel could have reasonably expected Mr. Tang to admit that he ran a fencing operation and was involved in prostitution, thereby incriminating himself on the stand. Consequently, we tend to agree with the trial court that the questions asked of Mr. Tang suggest "that there is an attempt to intimidate this witness . . . ."

that the defendant had 'panhandled' the victim a number of times in the past. It is further this Probation Officer's opinion that a process of harassment and intimidation had been ongoing between the defendant and victim. It is this Probation Officer's understanding that the defendant had attempted to rob the victim a few weeks previous to the incident of October 6, 1981. If this was an ongoing situation of harassment, it seems understandable that an eighty-three-year-old man living in a state of fear might logically have a heart attack when his fears were finally realized and he was actually robbed. Preying on the elderly who are forced to live in low-income neighborhoods seems a particularly vicious crime."

At the time of sentencing, defense counsel moved to have the entire paragraph stricken on grounds that the probation officer's statements were speculative and not particularly within the area of a probation officer's expertise. The court denied the motion, stating, "Well, the part which is probative is the last sentence in the third paragraph which reads 'Preying on the elderly who are forced to live in low-income neighborhoods seems a particularly vicious crime.' That is probative and is considered for that probative or— or its probative value."

The court's statement indicates that it considered only the last sentence of the allegedly objectionable paragraph to be relevant or probative and that with respect to the robbery of an 83-year-old man living in a low-cost hotel, the characterization of defendant as "preying on the elderly" living in low income areas accurately describes his conduct. In the absence of evidence that the court relied on more than such statement, we find no violation of defendant's due process rights.

Defendant's reliance on *People* v. *Calloway* (1974) 37 Cal.App.3d 905 [112 Cal.Rptr. 745] is misplaced. In *Calloway,* the court found that information in a probation report concerning several detentions for crimes that the defendant was never charged with or convicted of was highly prejudicial. (*Id.,* at pp. 908-909.) However, the court ultimately held that even though this material was not stricken from the report, defendant's due process rights were not violated because the court did not rely on this information in sentencing defendant. (*Id.,* at p. 909.)

Similarly in this case, as noted above, the court did not appear to rely on any allegedly objectionable material in the probation report. Also, we note that, in accordance with *Calloway,* the court granted defendant's motion to strike information concerning detentions for crimes with which he had never been charged or of which he had never been convicted.

## IV.

 Defendant contends that the court erred when it sentenced him to the upper term for burglary because it relied on an improper sentencing factor.

The court found that there were no mitigating factors. Then the court imposed the upper term for burglary because (1) "the planning and sophistication with which this crime was committed indicates premeditation"; (2) the defendant's prior convictions as an adult were numerous; and (3) the burglary involved a residence.

Defendant argues that the last factor is not a proper factor. However, we need not be concerned with the accuracy of this contention since the first two factors relied upon by the court constituted a proper and sufficient basis on which to impose the upper term.[3] It is not reasonably probable that in the absence of this factor the court would have sentenced defendant differently. (*People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].)

The order revoking probation and the judgment of conviction are affirmed.

Smith, J., concurred.

**KLINE, P. J.**—I dissent for the sole reason that in denying the motion to continue the revocation hearing until after the trial on the new charge the trial judge failed to exercise "reasonable discretion," as required by *People* v. *Jasper* (1983) 33 Cal.3d 931, 935 [191 Cal.Rptr. 648, 663 P.2d 206]. I simply cannot discern from the record any rational justification for departing from the preferred procedure of deferring revocation proceedings until the related criminal prosecution is completed. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 896 [120 Cal.Rptr. 384, 533 P.2d 1024]; *People* v. *Belleci* (1979) 24 Cal.3d 879, 888, fn. 7 [157 Cal.Rptr. 503, 598 P.2d 473].)

In support of the motion to continue, defense counsel pointed out that a continuance until after trial (which was set for December 28, 1981, merely 11 days after the hearing on the subject motion) would not prejudice the People, and this assertion was not refuted by the district attorney. Defense

---

[3]Rule 421 of the California Rules of Court lists the following as circumstances in aggravation: "The planning, sophistication or professionalism with which the crime was carried out, or other facts, indicate premeditation." (Rule 421(a)(8).) "The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness." (Rule 421(b)(2).)

counsel additionally articulated the reasons that denial of a continuance would prejudice appellant:

"Proceeding with the motion, your Honor, there is I believe, a substantial risk of danger to the system if in this particular case the Court is to deny defense motion to continue the motion to revoke. Specifically, I have available to me witnesses, which I have discovered through my investigation in behalf of Mr. Johnson. If those witnesses and disclosure of the defense theory were compelled in this matter, Mr. Johnson would be compelled to give up his Constitutional rights, including his right to a jury trial and before a jury trial to have proof presented by the People beyond a reasonable doubt. If we were to continue with the motion to revoke at this time, the District Attorney would potentially have the opportunity of understanding the defense theory of this case and have a full opportunity to cross-examine, among others, Mr. Johnson."[1]

The trial court offered no explanation for its ruling at the time it denied the continuance but simply declared: "That motion is denied."

In fairness to the trial judge in this case, it must be noted that at the time he ruled, *People* v. *Jasper, supra,* 33 Cal.3d 931, had not been decided, and *People* v. *Sharp* (1976) 58 Cal.App.3d 126 [129 Cal.Rptr. 476], which expressly approved the setting of all probation revocation hearings prior to trial "without exercising discretion in each case" (*id.,* at p. 130), was still good law.

In fairness to *all* trial judges, it also bears noting that though *Jasper* now requires the exercise of "reasonable discretion" in ruling upon a motion to continue a probation revocation hearing, the Supreme Court did not in its opinion in *Jasper* nor has it elsewhere provided any guidelines for exercising the discretion now mandated. On the other hand, the phrase "reasonable discretion" is meaningless unless, at a minimum, it requires an articulated

---

[1] It is also noteworthy that after the motion was summarily denied and the prosecution had presented its evidence, appellant refused to testify because he feared a felony-murder charge as a result of the victim's reported death some time after the burglary here in issue. Defense counsel explained the refusal to testify as follows: "The basis of that decision has to do with the revelation of the Court that the District Attorney believes there to be a cause of death being a heart attack and the possibility of extremely severe repurcussions [*sic*] to Mr. Johnson if an amended charged is added. With that in mind, I cannot proceed with his testimony. And I am making a further decision, your Honor, that additional witness [*sic*] on the issue of Mr. Tang's credibility will not be presented at these hearings. With the viewing of the tape of the conditional examination, we would be submitting the matter as to evidence."

reason that may be ascertained from the record. In my view, no such reason was provided by the trial court or may independently be found in the record.

Accordingly, I would reverse the judgment.