**UNITED STATES of America,
Appellee,**

v.

**Lee Allen NOVICK, Appellant.**

**No. 71–1554.**

United States Court of Appeals,
Ninth Circuit.

Nov. 12, 1971.

William Osterhoudt (argued), of Cooper, White & Cooper, San Francisco, Cal., for appellant.

James Hazard, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., F. Steele Langford, Asst. U. S. Atty., Chief, Crim. Div., San Francisco, Cal., for appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and THOMPSON, District Judge.*

KILKENNY, Circuit Judge:

Appellant waived a jury trial and was convicted for possession of an unregistered machine gun, in violation of 26 U.S.C. §§ 5812 and 5861(d). We affirm.

## FACTS

Appellant met Mr. and Mrs. Cole Carter in January, 1969, at which time they invited him to be a guest in the spare bedroom of their Richmond, California home. At the time, appellant indicated that he was a collector of firearms and was preparing to return to his home on the East Coast. While he was on a trip to San Francisco, Mrs. Carter attempted to commit suicide. After Mr. Carter called an ambulance, the Richmond police arrived and were admitted to the home by him. The officers inquired as to weapons that Mrs. Carter might use in another suicide attempt and were told by Carter that appellant, their guest, had a rifle and that it might be in the room he occupied. The officers, with Carter's express consent, entered the room, and immediately observed a bandolier of ammunition, an olive drab rifle clip pouch and a rifle case, in which appeared to be a gun. One of the officers then opened the gun case, removed a gun and discovered that it was an Army M-2 rifle, equipped with a selector switch which made it capable of automatic action in violation of the cited statutes. The bandolier contained clips of M-2 ammunition.

## The Alleged Search

■ Appellant claims that the actions of the officers in entering the guest room and opening his gun case violated his Fourth Amendment rights. At the outset, we must keep in mind that the amendment prohibits only *unreasonable*

searches. Here, the officers entered the room with the express consent of one of the owners. Appellant was a non-paying guest, rather than a tenant. When the officers entered the room, they saw the ammunition and the gun case, which might well contain a loaded weapon. Beyond question, sound police procedures required the officers to open the case in order to determine whether the gun was loaded. When the gun was removed, they immediately observed the device which made the weapon automatic, and, consequently, illegal.

The overall factual background in the record before us is somewhat similar to that part of the record in Coolidge v. New Hampshire, 403 U.S. 443, 486, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971), in which the officers asked Mrs. Coolidge if her husband owned any guns and she replied, "Yes, I will get them in the bedroom.", whereupon Mrs. Coolidge took the officers to the bedroom, removed four guns from a closet and delivered them to the officers. We quote from the opinion:

> " * * * Once Mrs. Coolidge had admitted them, the policemen were surely acting normally and properly when they asked her, as they had asked those questioned earlier in the investigation, including Coolidge himself, about any guns there might be in the house. The question concerning the clothes Coolidge had been wearing on the night of the disappearance was logical and in no way coercive. *Indeed, one might doubt the competence of the officers involved had they not asked exactly the questions they did ask."* P. 488, 91 S.Ct. p. 2049.

If the actions of the police in *Coolidge* did not amount to an unreasonable search,[1] neither did the actions of the police on the record before us. For that matter, the police in *Coolidge* were actually searching for guns in connection with an alleged crime. Here, the police

---

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

1. The Court in *Coolidge* upheld this part of the police action.

were casually looking for weapons to prevent the recurrence of an attempt at suicide. Other than the opening of the gun case, there is no distinction between the actions of the officers here and those in *Coolidge.* Since the police were in the performance of their legitimate police duties at the time they opened the gun case and in a sense acting as agents of Mr. Carter in looking for weapons with which his wife might again attempt suicide, the distinction is without significance. Our careful perusal of the entire record convinces us that the officers had a right to be where they were and that their discovery of the illegal weapon in no way touched upon or invaded appellant's Fourth Amendment rights. The officers here would have been derelict in their duties if they had not opened the case.

This is not a case such as Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), where a paying hotel guest occupied a room which was under lock and key and the hotel manager, who consented to the search, was not jointly occupying the premises. The other authorities offered by appellant are no more in point than *Stoner.*

### Lack of Scienter

This issue was decided adversely to appellant's contention in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) and United States v. Jones, 446 F.2d 12 (9th Cir. 1971).

Appellant's argument that he lacked notice of the registration requirements of the statute is completely without merit.

### Fifth Amendment Rights

■ While United States v. Freed, *supra,* did not directly pass on appellant's argument that the registration requirements of the legislation violated his Fifth Amendment rights, the issue has recently been decided against his contention in Warren v. United States, 447 F. 2d 259 (9th Cir., Aug. 13, 1971).

Affirmed.