[No. F003192. Fifth Dist. May 31, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ELI HAMILTON, Defendant and Appellant.

**Counsel**

Michael L. Gums, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANSON (P. D.), J.**—Defendant pleaded not guilty to a charge of possession of heroin for purpose of sale (Health & Saf. Code, § 11351), and filed a motion to suppress evidence under Penal Code section 1538.5. The motion was denied and defendant's petition seeking review by writ in this court was denied. After several continuances for the purpose of retaining private counsel, defendant failed to appear for his scheduled trial. When defendant was apprehended several months later and returned to Kern County, an amended information was filed containing the same substantive charge. Defendant pleaded not guilty and after learning that all evidence seized had been destroyed, moved to suppress any reference to the destroyed evidence under *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. The court denied the motion. A trial followed. The jury found defendant guilty and he was sentenced to state prison for the upper term of four years. He appeals.

### FACTS

The Bakersfield Police Department received a tip from an anonymous informant that defendant was at an apartment on "K" Street and that there was an outstanding arrest warrant for him from Los Angeles. The police verified the existence of the warrant and obtained a description and picture of the defendant.

Four officers proceeded to the address of the apartment. Two officers posted themselves at the back or side of the building and the other two approached the front door.

The officers knocked and Carrie Woolfolk, the lessee of the apartment, came to the door. The officers said they wanted to speak with defendant. Woolfolk denied knowing defendant, but the police persisted, saying they had a warrant for his arrest and would just wait outside. Woolfolk hesitated, then stepped back and opened the front door.[1]

The two officers entered. One stayed with Woolfolk in the living room; the other officer went to the kitchen. As the officer left the kitchen he headed toward a bedroom with its door ajar. Woolfolk ran in front of the officer and attempted to close the bedroom door. The officer pushed open the door, having observed someone lying on the bed.

---

[1]At the preliminary hearing, Woolfolk testified that she closed the door and the officers opened the door and entered.

The officers found defendant on the bed. Defendant identified himself when questioned by the officer and was thereafter placed under arrest. The other officers also entered the apartment. One, in the bedroom, pointed out baggies and other instruments lying on top of the nightstand near the bed.

Defendant exclaimed, ". . . it's not what you think it is. Taste it." All the material on top of the table was seized by the police. Analysis showed these two baggies to contain 0.92 grams of heroin. Three baggies of white powder were also seized. No definitive analysis was made of the contents, other than one excluding the possibility that they contained a controlled substance. Also seized were a "set of measuring spoons, a green filter, a glass vial containing an unknown green substance, a brown paper bag containing balloons, . . ., a plastic straw, mesh screens, plastic baggie containing cotton swabs, cotton balls, business card, green jar lid, a razor blade, a Ronson butane [*sic*] containing a flamer, two glass jars, a weave basket containing a screwdriver, tweezers, plastic spoon, scissors, a set of green scales, an eyedropper, a barrel cleaner, a butane lighter, a metal trough, three playing cards, a can lid, a set of surgical scissors, a glass tube."

These materials were introduced into evidence at the preliminary hearing. Thereafter, the police property card itemizing the seized evidence erroneously was marked "adjudicated." All the evidence was destroyed. The prosecutor reported the loss of the evidence to the court and defense counsel on the day of trial.

DISCUSSION

I

*Standing to Challenge the Search*

Defendant first argues error in the denial of his motion to suppress the evidence seized from Carrie Woolfolk's apartment.

The California Supreme Court in *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], concluded that the passage of Proposition 8, amending the California Constitution by the addition of article I, section 28, subdivision (d), abrogated the "vicarious exclusionary rule" established in California by *People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855]. (*Lance W., supra,* at p. 879.) In order to challenge an alleged illegal search, a defendant in California must show he was "the victim of the unlawful search." (*Id.,* at p. 882.) " '[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it.

That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. . . .'" (*Id.,* at pp. 882-883, citing *Rakas* v. *Illinois* (1978) 439 U.S. 128, 140 [58 L.Ed.2d 387, 399, 99 S.Ct. 421].)

The question of standing was neither raised nor litigated below. The trial court based its denial of defendant's motion to suppress upon a finding of consent.

Defendant sought review of the trial court's denial of the suppression motion by petition for writ of mandate. (5 Civ. 7488.) Defendant claimed: "In California, one may vicariously assert another's right to be free from unreasonable searches and seizures: evidence obtained in violation of constitutional guarantees is inadmissible whether or not it was obtained in violation of a particular defendant's constitutional rights. *People* v. *Martin* (1955) 45 Cal.2d 755." The People did not respond to the petition. This court denied the petition and stated: "Petitioner has failed to show that he had a reasonable expectation of privacy in a bedroom of Carrie Woolfolk's apartment. (See Cal. Const., art. I, § 28, subd. (d); *Rawlings* v. *Kentucky* (1980) 4[4]8 U.S. 98, 100 S.Ct. 2557; *United States* v. *Salvucci* (1980) 448 U.S. 83, 100 S.Ct. 2547; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 99 S.Ct. 421.)"[2]

In his appellate brief defendant makes no assertions as to standing. Respondent challenges defendant's standing only in a terse recital of general federal law.

Proposition 8 obviously changed the procedure for attacking a warrantless search in a motion to suppress. (See *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90, 96-97 [154 Cal.Rptr. 494].) As California no longer has the *Martin* vicarious standing rule, the establishment of, or challenge to, standing becomes a necessary ingredient in any motion to suppress.

Here, the issue was not litigated below. While there is authority for a limited remand to the trial court for a hearing on the question (*Combs* v. *United States* (1972) 408 U.S. 224, 226-228 [33 L.Ed.2d 308, 310-311, 92 S.Ct. 2284]; *United States* v. *Anderson* (9th Cir. 1981) 663 F.2d 934, 937-938), because the undisputed factual record is adequate and not "virtually barren" (*Combs, supra,* at p. 227 [33 L.Ed.2d at p. 311]), we find it possible to reach the legal conclusion of whether defendant had standing. We

---

[2]The statement is limited to the failure of the *petition* to show standing, and was not a final determination as to standing.

need not remand the matter for hearing. (*United States* v. *Hansen* (10th Cir. 1981) 652 F.2d 1374, 1382-1383.) "[T]he facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to 'a reasonable expectation [on his part] of freedom from governmental intrusion' upon those premises" (*Combs, supra,* at p. 227 [33 L.Ed.2d at p. 311]) are in the record before us.

■ The record discloses that defendant was visiting Bakersfield from Los Angeles. He was driven to Woolfolk's apartment late in the evening. He left luggage at two other places. He took with him only a "purse," pajamas and a robe. Defendant and the man who drove him there watched TV at Woolfolk's until about 3 a.m., when the other man left. When he came to pick up defendant the next day, defendant had been arrested.

When the police arrived, defendant was the sole occupant of one bedroom. He was lying on the bed and may have been asleep. He was wearing his pajama bottoms. His clothes were in the room. The search of the bedroom and seizure of the evidence in plain view occurred while defendant was in the room. Woolfolk testified that defendant was a friend who was not living at her apartment.

We do not know whether, or how often, defendant had been to the apartment before. Defendant claimed no proprietary interest in the apartment. From the record, it appears defendant was a guest or invitee. Defendant, after his arrest, claimed the drugs and paraphernalia were his. Upon a pretrial motion by defendant, the court held the statement inadmissible at trial.

■ In *United States* v. *Salvucci* (1980) 448 U.S. 83, 85 [65 L.Ed.2d 619, 623-624, 100 S.Ct. 2547], the United States Supreme Court abandoned the automatic-standing rule announced in *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233], accorded to defendants charged with crimes involving possession of the evidence seized. The court stated that in assessing the reach of Fourth Amendment rights, the question was "not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." (*United States* v. *Salvucci, supra,* 448 U.S. at p. 93 [65 L.Ed.2d at p. 629].) While claimed ownership of the goods seized is one fact to be considered, it is not determinative of whether the search violated a legitimate expectation of privacy. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 105-106 [65 L.Ed.2d 633, 642, 100 S.Ct. 2556].)

Earlier, in *Rakas* v. *Illinois, supra,* 439 U.S. 128, the United States Supreme Court had rejected a second holding in *Jones* v. *United States.* In *Jones,* the court had accorded standing to "anyone legitimately on premises

where a search occurs . . . ." (*Jones,* at p. 267 [4 L.Ed.2d at p. 706].) While affirming *Jones* on its facts,[3] the court rejected the "legitimately on the premises" test for an inquiry into whether the defendant had an expectation of privacy in the area searched. By way of example, the court noted a casual visitor in someone else's kitchen, would not have an expectation of privacy in the basement of the other person's home. (*Rakas,* at p. 142 [58 L.Ed.2d at p. 400].) Likewise, a casual visitor arriving at a home one minute before a search and leaving one minute afterward would have no expectation of privacy in the home. (*Ibid.*)

In *United States* v. *Perez* (8th Cir. 1983) 700 F.2d 1232, 1236, the court held that "out-of-town visitors who arrived with luggage to stay at the Perez home as overnight guests . . ." had a reasonable expectation of privacy that their property would be free from any unwarranted intrusion. In *State* v. *Whitehead* (1981) 229 Kan. 133 [622 P.2d 665, 669], the court found standing for a defendant who "was in the apartment dressed in pajamas when the police entered. Evidence was offered that the clothing found in the closet belonged to the defendant and that he lived there with Ms. Presley on an irregular basis." Finally, in *United States* v. *Lyons* (D.C. Cir. 1983) 706 F.2d 321, 327, the court, in holding that the defendant staying in a hotel room rented by government agents had a reasonable expectation of privacy, noted that "[j]ust as the protections due a person ensconced in his dwelling are not diminished by the fact that his residence is temporary, [citation], so they are not vitiated by the fact that someone other than the dweller is paying the mortgage or rental."

In *Rakas* v. *Illinois, supra,* 439 U.S. at page 133 [58 L.Ed.2d at page 394], Justice Renquist stated: "[W]e are not at all sure that the determination of a motion to suppress is materially aided by labeling the inquiry identified in *Jones* [*Jones* v. *United States, supra,* 362 U.S. 257], as one of standing, rather than simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." ▮ Defendant legitimately had a reasonable expectation of privacy in the bedroom occupied by him at Woolfolk's apartment. The search and seizure was conducted while he was the sole occupant of the room. He probably slept there. The search did not yield evidence from another room of the apartment; defendant was present in the room during the entire search. (See *Rakas,* at p. 142 [58 L.Ed.2d at p. 400]; *State* v. *Fillyaw* (1981) 104 Wis.2d 700 [312 N.W.2d 795, 803], cert. den. 455

---

[3]In *Jones,* defendant was given the key to an apartment of a friend. He was the sole occupant of the apartment at the time of the search, the lessee being away for several days. He had slept there "maybe a night" and had clothes and possessions in the apartment.

U.S. 1026 [72 L.Ed.2d 147, 102 S.Ct. 1730].) While defendant could not reasonably expect to exclude Woolfolk from the room, he could reasonably expect the room to remain free from governmental intrusion. (*Rawlings* v. *Kentucky, supra,* 448 U.S. at p. 105 [65 L.Ed.2d at p. 642].) The fact that Woolfolk had the right to consent to a search is a risk that defendant assumed, but should not undermine his expectation of privacy. (See *State* v. *Knutson* (1975 Iowa) 234 N.W.2d 105, 107; *United States* v. *Novick* (9th Cir. 1971) 450 F.2d 1111, 1112, cert. den. 405 U.S. 995 [31 L.Ed.2d 464, 92 S.Ct. 1271].) To hold otherwise, would be to negate Fourth Amendment protection to any who share their dwellings with another. Based upon the facts in this record, defendant had standing.

## II

### *Consent*

██ The police made a warrantless entry into Woolfolk's apartment. At the suppression hearing, the sole ground argued for the validity of the search was the consent of Woolfolk. Contradictory testimony was given about the circumstances surrounding the officers' initial entry into the apartment. Woolfolk testified that after some discussion with the officers, she closed the door, denying entry. She then stated they opened the doors, both front and back, and entered. The officers testified that although Woolfolk denied knowing defendant and refused them entry, she finally stepped back and pulled the front door wide open.

Both officers testified that after entering, one of them stayed with Woolfolk in the living room while the other went to the kitchen. Finding no one in the kitchen, the officer went toward the bedroom. At this point, Woolfolk raced in front of the officer and started to close the partially open door to the bedroom. The officer, however, pushed the door open, having seen someone on the bed. He could not tell whether the person was a male or a female. We note that at the time of the search, Woolfolk's young daughter was probably in the apartment.

██ "Whether the search was made following a valid consent is a question of fact." (*People* v. *Botos* (1972) 27 Cal.App.3d 774, 779 [104 Cal.Rptr. 193].) We review the findings of the trial court to see if substantial evidence supports its conclusions. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) Here, the court found that: ". . . Miss [W]oolfolk voluntarily opened the door and

admitted the officers by her conduct. The conduct of the officers was not such as to coerce that conduct.

"Miss Woolfolk's conduct after the entry was not sufficient to constitute a revocation of the consent.

"Miss Woolfolk was the tenant of the entire apartment, and as such, conferred consent to search it in its entirety."

■ It is the province of the finder of fact to resolve conflicts in testimony. The trial court credited the testimony of the officers. Their testimony that Woolfolk fully opened the door in response to their repeated requests to look for defendant supports a finding of consent. "'[A] consent to enter may be expressed by actions as well as words.'" (*In re D.M.G.* (1981) 120 Cal.App.3d 218, 225 [174 Cal.Rptr. 557].) Neither does it appear, as a matter of law, that the persistence of the officers constituted coercion. (See *People* v. *Gurtenstein* (1977) 69 Cal.App.3d 441, 451 [138 Cal.Rptr. 161], cert. den. 434 U.S. 1035 [54 L.Ed.2d 783, 98 S.Ct. 769].)

■ A third party with common authority over the place searched may validly consent to its search. (*People* v. *Haskett* (1982) 30 Cal.3d 841, 856-857 [180 Cal.Rptr. 640, 640 P.2d 776].) ■ At the hearing, defendant insinuated that he may have had exclusive control of the bedroom, thus disabling Woolfolk from consenting to a search of the bedroom. (*Beach* v. *Superior Court* (1970) 11 Cal.App.3d 1032, 1035 [90 Cal.Rptr. 200].) However, no positive evidence of his exclusive control was presented at the hearing. Rather, the evidence showed he was a one-night visitor in an apartment rented by Woolfolk. It does not appear from the record that he had the right to exclude Woolfolk from the bedroom. In *United States* v. *Novick, supra,* 450 F.2d 1111, 1112, the court found a host had the right to consent to the search of articles in a room occupied by a houseguest.

However, the legal conclusion by the court that Woolfolk's conduct was insufficient to constitute a withdrawal of consent is incorrect. The testimony surrounding her actions was uncontradicted and given by the officers themselves. "It is true that a voluntary consent to search may be withdrawn at any time before the search is completed. [Citation.] Actions inconsistent with consent may act as a withdrawal if those actions are positive in nature. [Citation.]" (*People* v. *Gurtenstein, supra,* 69 Cal.App.3d at p. 451.) In *Botos,* the court stated: "Although actions inconsistent with consent may act as a withdrawal of it, these actions, if they are to be so construed, must be positive in nature. Thus, if a suspect who has given consent to search his car's trunk throws the key in some bushes, his consent is withdrawn [citation]. Similarly, if a search is agreed to, but the suspect later refuses

to cooperate with the police, there is no consent [citation]." (*People* v. *Botos, supra,* 27 Cal.App.3d at p. 779.)

The attempt to shut the door of the bedroom by Woolfolk was direct, positive and capable of only one interpretation. She did not want the officers to enter the bedroom. If her conduct in fully opening the front door is interpreted as consent to search, it seems anomalous to deny the implications of her equivalent conduct in attempting to shut the bedroom door. The fact that the officer was able to push the door open in spite of her attempt to close it in no way compromises the clear meaning of her action. ██ Withdrawal of consent, even when the object of the search is found moments later, terminates immediately the authority to continue the search. (*Berg* v. *State* (1980 Fla.App.) 384 So.2d 292, 293-294.) Evidence procured after withdrawal of consent properly is suppressed. (*Id.,* at p. 294.)

Those cases finding conduct insufficient to constitute withdrawal of consent are distinguishable. In *People* v. *Gurtenstein, supra,* 69 Cal.App.3d at page 451, the court related: "Here, defendant did nothing to indicate that he was withdrawing his consent. He merely refused to sign a written consent. He did not state he was withdrawing his oral consent. In addition, the record shows that defendant did not refuse to help the officer open the suitcase. Defendant only told the officer that the suitcase was not his. He did not refuse to let the officer open it up himself." In *People* v. *Botos, supra,* 27 Cal.App.3d 774, 779, the defendant "merely denied having the keys. This denial does not constitute positive action, and may not be construed as a refusal to cooperate, since Wenger voluntarily produced the key when asked about a bulge in his pocket. When Johnson requested Wenger to open the luggage, Wenger complied. Throughout the proceeding, there was no refusal to cooperate or any other action consistent with a withdrawal of consent."

██ Woolfolk's act was an active attempt to exclude the officers from the bedroom. Woolfolk's conduct constituted a withdrawal of consent to enter the bedroom. While the entry into the apartment was not illegal, the entry into the bedroom and the search which followed were improper. Upon uncontradicted facts, we find the material seized in the search should have been suppressed.

Because we find defendant's argument on the search issue has merit, we need not discuss the problems presented by the unusual destruction of all evidence before trial by the police and the application of the recent *Trombetta* case (*California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528]), or defendant's additional arguments.

The judgment is reversed.

Franson, Acting P. J., and Tuttle, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.