[No. F008614. Fifth Dist. Oct. 26, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALDINE THOMPSON, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976(b) and rule 976.1, this opinion is ordered published through part I-A. The remainder of the opinion is not certified for publication.

COUNSEL

Charlotte A. Wittig for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SARKISIAN, J.\*—**

### FACTS AND PROCEEDINGS BELOW

On May 1, 1986, Detective William Henry of the Bakersfield Police Department prepared an affidavit in support of his petition for a search warrant of a business called C & I Liquors at 932 Lakeview Avenue in Bakersfield, California. The warrant states that within 15 days of the date of its execution a confidential informant was sent to C & I Liquors to make a controlled buy of cocaine. The informant was searched for narcotics and contraband with negative results. The officers maintained surveillance from outside the store for a 10-minute period while the informant undertook the buy. They then met with the informant at a prearranged location where the informant handed over a white powdery substance which proved to be cocaine. The informant indicated that the purchase was made from Bobby and Dolly while inside C & I Liquors. The confidential informant told officers that within five days of the date of the affidavit the informant observed Bobby and Dolly continuing their sales of narcotics from inside C & I Liquors.

At 7:15 a.m. on May 2, 1986, Bakersfield Police Department Detective Archie Scott executed a search warrant on C & I Liquors. When Detective Scott entered the liquor store, he asked the man behind the counter if Dolly was present. Detective Scott walked to the rear of the store and asked for Dolly. The defendant, Geraldine Thompson, walked out of a back room. Detective Scott identified himself as a police officer and told the defendant that he had a warrant. Scott told Thompson to walk toward the store's front counter. Detective Scott found codefendant Hudson lying on a bed with a plastic baggie underneath his right side. The baggie was filled with tinfoil bindles. Scott found three firearms, two .22-caliber rifles and one .410 shotgun. Beneath the bed Detective Scott found a brown paper bag that contained currency. He also found a police scanner close to the bed.

Scott was followed into the store by two uniformed officers. In total, there were nine officers on the premises of the store while Scott executed the warrant.

Kevin Clerico was one of the uniformed officers who followed Detective Scott into the liquor store. Scott immediately directed Clerico's attention to Mrs. Thompson as she emerged from the back room to the front of the store. Scott directed Clerico's attention to Mrs. Thompson with a motion that Clerico should keep his eye on Thompson. Thompson walked to the

---

\* Assigned by the Chairperson of the Judicial Council.

front counter area. As she walked toward that point, she walked past the man standing behind the counter, Otis Lilly. For one moment they were briefly standing at the same place together. Lilly was drinking a beer because he appeared to be going "through the DT's."

As Thompson approached the counter area, Clerico told her not to move and not to be fidgety. Clerico also asked the defendant not to move her hands. She did not comply with this request. The defendant looked nervous. She began moving her right foot and shuffling it underneath the counter. She was also taking her hands from the countertop and moving them back and forth.

Clerico told Thompson to move back from the counter. As he approached the defendant, Clerico found five tinfoil bindles he suspected contained narcotics. The bindles were located on the floor underneath a three-inch overhang from the counter itself. No one was close to the defendant as she made her kicking motions. At the time, Lilly was seated 10 to 15 feet away. Detective Henry seized the bindles as evidence. Lilly was not searched for drugs but was only given a patdown for weapons. Officer Clerico admitted he never actually saw the defendant drop the bindles.

Detective William Henry testified that the bookkeeping system on the brown paper bag was called a "pay and owe" system that drug dealers used to keep track of those to whom they sold narcotics. Clerico showed Henry the contraband underneath the main counter in front, just where the defendant Thompson had been standing. In Henry's experience as a narcotics officer, the amount of cocaine in the five bindles next to where Thompson had been standing was a quantity sufficient for sale rather than for mere possession. Henry concluded that the style of packaging, the 170 milligrams contained in each bindle, the firearms, the proximity of a police scanner and the amount of money kept close to the narcotics all tended to show that the cocaine found on the premises was to be sold. Henry admitted that it was not possible to tell the difference between five bindles purchased for personal use as contrasted with five bindles of cocaine held for sale.

In lieu of direct examination testimony, Thompson presented a sworn declaration. In the declaration, Thompson stated she worked for Andrew Butler as a clerk at C & I Liquors in Bakersfield. She stated that she opened the store at approximately 7 a.m. on May 2, 1986. While cleaning the store with the assistance of Otis Lilly, she did not notice the five bindles of cocaine on the floor which the police subsequently found. The previous evening Thompson had found 15 similar bindles in a plastic Ziploc baggie in the back room among Andrew Butler's personal belongings. The defendant claimed that seven or eight people had access to the spot where she was standing behind the counter before the police arrived on May 2, 1986.

The defendant testified on her own behalf later in the trial. Her testimony paralleled her earlier statements in the declaration. When the police found the bindles of cocaine, the defendant stated to the police that they were not hers. The defendant denied that she ever tried to kick the bindles. She also denied ever selling drugs or having drugs in her possession on the premises.

Evangeline McFadden testified that she was at C & I Liquors on the morning of the search. She recalled watching Mr. Lilly get up and drink a beer while the police were in the store. She also testified that the defendant had an excellent reputation in the community and could not believe that the defendant ever used or possessed drugs.

Mary Lou Davis testified that she was restocking wine at C & I Liquors when the police arrived to execute the search warrant. Davis testified that she had not seen bindles of foil on the floor when she and the defendant cleaned the store that morning. Davis claimed that during the search the defendant was not moving her hands.

The defendant was tried with Bobby Dean Hudson as a codefendant at trial. Hudson was charged and convicted of possession of cocaine for purpose of sale in violation of Health and Safety Code section 11351. The jury acquitted Hudson of attempting commission of the offense while being armed with a firearm. Geraldine Thompson was also charged with possession of cocaine for the purpose of sale in violation of Health and Safety Code section 11351. The jury, however, found Thompson guilty of the lesser-included offense of possession of cocaine in violation of Health and Safety Code section 11350. Thompson was sentenced to three years in prison with credit for time served. Thompson perfected the instant appeal raising three issues, which will be addressed below.

## DISCUSSION

### I.

### THE SEARCH WARRANT.

Initially, the defendant attacks the validity of the search warrant, claiming there was not probable cause for its issuance. The defendant further asserts that the police did not act in good faith in relying upon the accounts of a confidential informant with no independent corroboration of the informant's information. Thus, the defendant claims that the trial court erred in refusing to grant the motion to quash the warrant.

 As pointed out by the People, however, the defendant fails to address the threshold issue of standing. The defendant's only

response to this point is that the trial court refused to rule on standing. Nevertheless, the question of standing was raised by the People before trial in their opposition to the defendant's motion to quash the search warrant. Thus, standing was properly raised below and preserved as an issue on appeal.

## A. *Standing.*

■ After the passage of Proposition 8, the California Supreme Court held that the admission or exclusion of evidence under search and seizure law is now governed by the standards of the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 887-888, 890 [210 Cal.Rptr. 631 [694 P.2d 744]; *People* v. *Medina* (1987) 189 Cal.App.3d 39, 44 [234 Cal.Rptr. 256].) ■ Proposition 8 abrogated the vicarious standing rule established in California by *People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855]. (*In re Lance W., supra,* 37 Cal.3d at p. 879.)

Federal standing issues were formerly governed by *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233]. Under the *Jones* rule, defendants could establish two kinds of standing: (1) automatic standing, and (2) standing for anyone legitimately on the premises. (*Id.* at pp. 263-265 [4 L.Ed.2d at pp. 703-705].) In *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the Supreme Court eliminated standing for anyone legitimately on the premises. (*Id.* at pp. 140-148.) In its place, the *Rakas* court held that standing existed for those with a possessory interest in a place or a thing and a concurrent, legitimate expectation of privacy. (*Id.* at pp. 148-149 [58 L.Ed.2d at pp. 404-405].) In *United States* v. *Salvucci* (1980) 448 U.S. 83, 85 [65 L.Ed.2d 619, 624, 100 S.Ct. 2547], the United States Supreme Court abandoned the automatic standing rule announced in *Jones.*

In *Rawlings* v. *Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633, 100 S.Ct. 2556], the Supreme Court clarified its holding in *Rakas.* The *Rawlings* court held that while ownership was a factor to consider in standing cases, the primary inquiry is whether government officials violated a defendant's legitimate expectation of privacy. (*Id.* at pp. 105-106 [65 L.Ed.2d at pp. 641-642].)

. A defendant must establish a legitimate expectation of privacy in the particular area searched. (*People* v. *Ooley* (1985) 169 Cal.App.3d 197, 203 [215 Cal.Rptr. 112]; *United States* v. *Meyer* (5th Cir. 1981) 656 F.2d 979, 981.) In California, an overnight guest, for instance, has been found to have a legitimate expectation of privacy. (*People* v. *Hamilton* (1985) 168 Cal.App.3d 1058, 1066 [214 Cal.Rptr. 596].) Employees are protected by the Fourth Amendment from improper intrusions of privacy into their

desks, notebooks and other personal work areas. (*United States* v. *Lefkowitz* (9th Cir. 1980) 618 F.2d 1313, 1316, fn. 2; *Villano* v. *United States* (10th Cir. 1962) 310 F.2d 680, 683.)

 Here, the defendant was seen making furtive, kicking motions with her leg. When the officers checked the counter area where the defendant was standing, they found five bindles of cocaine underneath the three-inch overhang of the counter. This location was not a private area from which the defendant could have had a legitimate expectation of privacy. The defendant could have had a legitimate expectation of privacy in a counter-top drawer, in the back storeroom, in a desk or in a closet where one stores personal belongings. The floor underneath the three-inch lip of a counter is not normally used to store personal belongings, records, receipts or anything else.

Because the defendant could not have a reasonable expectation of privacy in the floor behind the counter, she cannot establish the standing necessary to challenge the sufficiency of the warrant. The mere fact that the defendant was an employee at C & I Liquors does not confer her with standing under the rationale of the *Rakas* decision.

B., II., III.*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Woolpert, Acting P. J., and Ardaiz, J., concurred.

---

* See footnote, *ante,* page 1503.