[No. F008490. Fifth Dist. Apr. 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY RALPH WORKMAN et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

■

**COUNSEL**

Carolyn Morris, John J. Woods and Debra R. Huston, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

FRANSON, P. J.— ■ The important question presented by this appeal is whether, when the magistrate suppresses evidence at the preliminary hearing, the prosecutor can dismiss the complaint and relitigate the issues after filing a second complaint rather than seeking review of the unfavorable ruling. The issue involves reconciling subdivisions (d) and (j) of Penal Code section 1538.5.[1] ■ We conclude subdivision (j) applies under the facts of this case, and the second filing and issue relitigation were proper. We further hold the trial court erred in finding that appellants had standing to challenge the search of codefendant Stuart's business, and we reject appellants' contentions of sentencing error. We affirm the judgments.

### STATEMENT OF THE CASE

Appellants Michael Wayne Matlock, Harry Ralph Workman and Charles M. Petrillose, together with three other defendants, John Stuart, Kenneth Ward and Jerry Hardiman, were charged with numerous thefts arising from an oil stealing scheme. The prosecutor filed a 25-count complaint and commenced a preliminary examination in April 1985. After nine weeks of testimony, the magistrate granted motions to suppress by Petrillose and Stuart. Upon motion by the prosecutor, the case was dismissed without prejudice as to all defendants.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The district attorney filed a second complaint alleging 70 counts based on the same transactions as the counts in the original complaint. Appellants challenged the propriety of the second filing and, pursuant to section 1538.5, subdivision (d), urged the magistrate at the second preliminary hearing to give collateral estoppel effect to the first magistrate's orders granting the motions to suppress. The second magistrate rejected the arguments and denied renewed motions to suppress. At the conclusion of the second preliminary hearing, appellants were held to answer.

The district attorney filed an 80-count information in superior court. Appellants brought a section 995 motion challenging the People's refiling and the second magistrate's failure to give collateral estoppel effect to the first magistrate's orders on the suppression motions. The court allowed all defendants to join the motions. The motions were denied.

Eventually, appellants reached a plea agreement with the district attorney. Matlock and Petrillose pleaded no contest to four counts of grand theft (§ 487) and admitted the allegations pursuant to section 12022.6, subdivision (b) and section 1203.045, subdivision (a) (loss exceeding $100,000). Workman pleaded no contest to three counts of grand theft and admitted the special allegation of section 12022.6, subdivision (a) (loss exceeding $25,000). All defendants understood their pleas were "unconditional," and the court, in sentencing them, could consider all counts alleged in the information other than those alleged in the alternative. The men were sentenced to state prison for terms ranging from three years and eight months to six years.

STATEMENT OF FACTS

The following facts are pertinent to resolution of the procedural and sentencing issues. The evidence at the second preliminary hearing showed that in 1984, Southern California Gas Company received information regarding alleged oil thefts from their Honor Rancho facility at Valencia, California. At the time, Matlock was the facility supervisor. Workman was one of four shift supervisors overseeing crews manning the facility twenty-four hours a day. Petrillose was a Mobil Oil Company representative selling lubricating products to Honor Rancho for its machinery and vehicles. Stuart was a Mobil Oil distributor doing business as Stuart's Petroleum in Bakersfield, California. Ward owned a road construction business, and Hardiman worked for Ward driving his trucks and other machinery.

For a two-year period between 1982 and 1984 on over one hundred fifty occasions, Matlock arranged with Ward to drive a truck to the facility, fill it with oil from an Honor Rancho storage tank and take the oil to Bakersfield.

Workman assisted in the loading of the oil, Ward and Hardiman drove the oil tanker from Honor Rancho to Bakersfield, and Stuart sold the oil. Petrillose arranged for Stuart to sell the product, acted as trouble shooter and facilitated payment for each person in the operation. Workman told Mr. Percival, the security guard at the Honor Rancho gate, that the tanker was cleaning "the muck out of the bottom of the tanks."

To document their transactions, Petrillose generated bills of lading or invoices which indicated that the oil came from "Canyon Refining and Brokerage" rather than Southern California Gas Company. Workman supplied the invoices to Ward or Hardiman when they took a load of oil from the Honor Rancho facility. The truck drivers delivered one copy of the invoice to Stuart. Stuart indicated on the invoice that the oil was received by "Reliance." He knew "Reliance" was a fictitious name.

John Brady, vice-president of transmissions and storage for Southern California Gas, testified that the oil stored at the Honor Rancho facility was shipped via metered pipelines to refineries for the account of Texaco. No supervisor or employee had authority to contract for the sale of oil or the removal of "tank bottoms" (settlement in the bottom of the tanks consisting of water, brine and oil) from the facility. The tank bottoms did not require cleaning.

## DISCUSSION

### PART I

#### RELITIGATION OF THE SUPPRESSION MOTIONS

*Procedural Issues:*

1. *Appellants' failure to obtain a certificate of probable cause does not preclude review of this issue.*

Because appellants pleaded nolo contendere, they assumed they needed a certificate of probable cause to raise the collateral estoppel issue. They acknowledged their failure to obtain certificates but argued the court should address the merits of their claim on judicial economy grounds. We asked for further briefing on whether section 1538.5, subdivision (m) authorized their challenge.

That section provides in pertinent part: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a

criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he or she has moved for the return of property or the suppression of the evidence."

California Rules of Court, rule 31(d) states: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds . . . involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 . . . are inapplicable."

Under section 1538.5, subdivision (m) and California Rules of Court, rule 31(d), appellants' claim is cognizable despite their lack of a certificate of probable cause if their claim is construed as a request for "review of the validity of a search or seizure" or "involving a search or seizure."

■ Criminal statutes must be construed in favor of the defendant. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. (*In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553].) ■ Appellants challenge the second magistrate's failure to give collateral estoppel effect to the earlier magistrate's granting of the suppression motions. They also challenge the prosecutor's ability to relitigate the suppression issues upon a second filing without having sought review of the earlier rulings pursuant to section 1538.5, subdivision (d). While appellants' contentions do not involve the searches and seizures themselves, they question the proper procedure for relitigation of search and seizure issues at the preliminary hearing stage of the proceedings. If the pertinent language of section 1538.5, subdivision (m) and California Rules of Court, rule 31(d) is read broadly, those sections can be construed to include appellants' contentions.

The Attorney General submits the collateral estoppel issue can only be raised pursuant to a certificate of probable cause. He relies on *People* v. *Meyer* (1986) 183 Cal.App.3d 1150 [228 Cal.Rptr. 635], which we find distinguishable. A welfare investigation revealed that Meyer had business operations and assets which he had not reported to the welfare department. The Department of Social Services held a hearing to determine whether they would discontinue his welfare benefits. The hearing officer concluded the county had not sustained its burden of proof and ordered it to continue benefits. The district attorney then charged Meyer with welfare fraud. Meyer moved to dismiss the charges on the ground the prosecutor was collaterally estopped to bring charges since Meyer had been exonerated at the administrative hearing. The trial court denied the motion, and Meyer

pleaded guilty to one count of welfare fraud. The trial court granted his motion for a certificate of probable cause. (*Id.* at pp. 1155-1156.) The issue on appeal was whether Meyer's collateral estoppel claim was cognizable after his guilty plea. The court concluded it was. (*Id.* at pp. 1157-1159.)

*Meyer* is not dispositive of this case because Meyer's collateral estoppel issue did not relate to a suppression motion. Since appellants' collateral estoppel question in the present case involved a search and seizure, it comes within the section 1538.5, subdivision (m) exception to the certificate of probable cause requirement.

### 2. *Appellants did not have standing to join in the suppression motions regarding the search of codefendant Stuart's business.*

The collateral estoppel/refiling issue is based on the Stuart and Petrillose motions to suppress. Appellants can contest the court's ruling on the seizure of documents from Stuart's business only if they had legal standing to contest the search. Appellant Petrillose, of course, had standing to contest the search of his own premises. The standing issue as to the collateral estoppel motion was not litigated below.

Stuart filed a motion to bar refiling of the charges on collateral estoppel grounds at the second preliminary hearing. For reasons not apparent from the record, all defendants were permitted to join his motion. In superior court, as part of their section 995 motions, all defendants were permitted to raise the collateral estoppel/refiling issue, but the prosecutor never conceded all defendants had standing to challenge the Stuart and Petrillose searches and seizures. The trial court found appellants had standing to join Stuart's renewed suppression motion apparently because all the defendants at one time or another had a possessory interest in most of the documents seized from Stuart's business.

When the standing issue is not litigated in the trial court, the appellate court can reach a legal conclusion as to whether the defendants had standing if the record is adequate. The record must contain the facts necessary to determine whether the defendant had an interest in connection with the searched premises that gave rise to a reasonable expectation on his part of freedom from governmental intrusion upon those premises. (*People* v. *Hamilton* (1985) 168 Cal.App.3d 1058, 1063-1064 [214 Cal.Rptr. 596].) In addition, where the facts are not in dispute, the appellate court may review the question of standing de novo. (*United States* v. *Kuespert* (9th Cir. 1985) 773 F.2d 1066, 1067.) In this case, the facts are not disputed, and the record is adequate to evaluate appellants' claims.

■ Under former California law, a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person. However, Proposition 8 abrogated the vicarious exclusionary rule, and a defendant's right to object to evidence seized is now controlled by federal standards. Thus, appellants have the burden of establishing that their own Fourth Amendment rights were violated by the search and seizure at Stuart's business. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 130, fn. 1 [58 L.Ed.2d 387, 393, 99 S.Ct. 421].)

■ An illegal search only violates the rights of those who have a legitimate expectation of privacy in the place searched or in the property seized. (*United States* v. *Payner* (1980) 447 U.S. 727, 731 [65 L.Ed.2d 468, 474, 100 S.Ct. 2439].) "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (*Rakas* v. *Illinois, supra,* 439 U.S. at p. 134 [58 L.Ed.2d at p. 395].) However, neither ownership of the premises searched nor presence at the scene is required to assert a reasonable expectation of privacy under the Fourth Amendment. A " 'formalized arrangement among defendants indicating joint control and supervision of the place is sufficient to support a legitimate expectation of privacy.' " (*U.S.* v. *Johns* (9th Cir. 1988) 851 F.2d 1131, 1136.)

In several federal cases the courts have found that participation in an arrangement which indicates joint control and supervision of the place searched or the property seized is enough to establish a protected privacy interest. ■ Appellants contend they have standing based on these joint venturer or coconspirator cases.

In *U.S.* v. *Johns, supra,* 851 F.2d 1131, 1136, the court found that a defendant had standing to challenge the search of a storage unit which was rented to his codefendant. The unit contained chemicals used to manufacture methamphetamines. Both defendants were charged with conspiracy to manufacture and possess drugs, and the defendant declared he was the co-owner of the chemicals and paid a portion of the rent for the storage unit. The appeals court held the conspirators were engaged in a joint venture at the location of the search.

In *United States* v. *Quinn* (9th Cir. 1984) 751 F.2d 980, Quinn and Hunt smuggled marijuana from Columbia to Quinn's ranch in northern California. The court held that Quinn had standing to contest the search of a fishing vessel because he owned the boat and the marijuana seized from it arising from his joint venture with Hunt. "Ownership of both the place searched and the item seized conferred standing" for Fourth Amendment

purposes. Although the boat, when searched, was returning from a delivery of marijuana to Quinn, it nonetheless was pursuing the purpose of the joint venture. "Where a joint venture is being pursued, the mere fact of a joint venturer's absence from the place searched is insufficient to establish abandonment or relinquishment of the property seized." (*Id.* at p. 981.)

In *United States* v. *Johns* (9th Cir. 1983) 707 F.2d 1093, two airplane pilots who delivered packages containing marijuana to a remote airstrip and then departed had standing to challenge the search of the packages. The court found the pilots had a formalized arrangement for the transportation of the drugs with five other defendants arrested when the packages were seized at the airport. The pilots and the other defendants occupied a bailor-bailee relationship, and since the pilots were not to be paid until after delivery of the marijuana, their interests in the packages when opened was indistinguishable from those of the other defendants. (*Id.* at pp. 1099-1100.)

In *United States* v. *Perez* (9th Cir. 1982) 689 F.2d 1336, 1338, the defendants were held to have a legitimate expectation of privacy in a truck they did not own, which had been hired for another purpose, because they were closely following and supervising the truck as it traveled on the highway transporting heroin, which they had hidden in the gas tank. The "formalized arrangement" for the transportation of the heroin justified the expectation of privacy.

These federal cases are distinguishable from the present case in that the legitimate-expectation-of-privacy holdings are based on findings that the conspirators either owned or had a possessory interest in the contraband *at the time of the search*. In this case, the trial court found appellants had standing because at one point in time (preceding the search) each of them had a possessory interest in the documents seized at Stuart's business. Workman had the paperwork when the oil was taken from the Honor Rancho facility. He gave invoices in triplicate to Ward, the tank truck driver, who kept one copy and delivered another copy to Stuart by handing it to him or leaving it in his mailbox. Stuart gave a copy to Petrillose who delivered it back to Matlock. There was no proof offered by any of the appellants that they retained an ownership or possessory interest in the documents after they were delivered to their coconspirators and eventually to Stuart. Nor was there any evidence presented from which we can infer a right of joint control or supervision of Stuart's business premises or the documents seized therefrom at the time of the seizure. Thus, unlike the federal cases, appellants had no standing to object to the search of Stuart's premises.

Since only appellant Petrillose had standing to object to the search of his home, the following discussion about the People's right to relitigate the suppression motion pertains only to Petrillose's motion to suppress.

*The Merits*:

 1. *The People's failure to challenge the first magistrate's rulings on the motion to suppress did not preclude relitigation of the same issues upon the filing of the second complaint.*

Appellant Petrillose asserts the court erred in denying his section 995 motion because the evidence suppressed by the magistrate at the first preliminary hearing could not be used against him at the second preliminary hearing.

At the first preliminary hearing, the evidence seized at Petrillose's house and Stuart's business was suppressed. When Stuart's motion to suppress was granted, the prosecutor immediately moved to dismiss the complaint. He refiled the case a week later alleging an additional 45 counts based on the same transactions on which the original 25 counts were based. Appellant contends section 1538.5, subdivision (d) precludes relitigation of the suppression issues. The Attorney General submits the prosecutor's actions were proper under section 1538.5, subdivision (j).

Section 1538.5, subdivision (d) provides: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing unless further proceedings authorized by this section, Section 871.5, Section 1238, or Section 1466 are utilized by the people."[2]

Subdivision (j) of that section provides in part: "If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return of the property or suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer at the preliminary hearing, the people may file a new complaint . . . and the ruling at the prior hearing shall not be binding on any subsequent proceeding. . . ."

Appellants rely on *People* v. *Superior Court (Brotherton)* (1983) 147 Cal.App.3d 281 [195 Cal.Rptr. 96]. There, the superior court granted defendant's suppression motion, and the People then moved to dismiss the case pursuant to section 1385.[3] The People refiled an identical complaint in

---

[2] Those sections address: review procedures when the magistrate dismisses an action (§ 871.5), when the People may appeal (§ 1238) and appealable judgments and orders (§ 1466).

[3] Section 1385, subdivision (a) provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of

the municipal court, and defendant was held to answer. Defendant again moved to suppress the evidence contending the People were barred by section 1538.5, subdivision (d) from introducing any evidence previously suppressed. The court granted the motion.

On appeal, the People urged that section 1538.5, subdivision (d) does not bar renewed litigation of suppression issues when they have initiated a second felony prosecution pursuant to section 1387. The court disagreed and held "where . . . the prosecution fails to pursue available appellate remedies following a superior court's order granting a motion to suppress evidence, section 1538.5, subdivision (d) will preclude relitigation of the suppression issues upon a subsequent filing in the same county of the identical charges pursuant to section 1387." (147 Cal.App.3d at p. 287.)

In our view, *People* v. *Superior Court (Brotherton), supra,* 147 Cal.App.3d 281 is not dispositive for two reasons. First, it is distinguishable because the prosecutor refiled an identical complaint. In this case, the second complaint included 45 additional counts. Second, with all due respect, the court's analysis is faulty. Although the opinion thoroughly addresses section 1538.5, subdivision (d), it made short shrift of subdivision (j). In addition, the court seems to have misread *People* v. *Belknap* (1974) 41 Cal.App.3d 1019 [116 Cal.Rptr. 664], one of the cases upon which it relied, in reaching the conclusion it did.

*Belknap* addressed the question of whether under subdivision (j) a ruling granting defendant's motion to suppress is binding on the People in subsequent proceedings. Defendant was charged with possession of amphetamines for sale (Health & Saf. Code, § 11911) and possession of marijuana (Health & Saf. Code, § 11530). At the preliminary hearing, certain evidence was suppressed, and defendant was held to answer on the Health and Safety Code section 11911 violation but not on the section 11530 charge. When the People's challenge of the suppression motion ruling was denied as untimely, they moved to dismiss the information charging the Health and Safety Code section 11911 violation which had been filed in superior court and filed a new complaint alleging the same two offenses. Defendant moved to dismiss on the ground the findings on the suppression motion were binding at the second preliminary hearing based on the new complaint.

The appellate court concluded the prosecution was bound by the order suppressing the evidence relating to the Health and Safety Code section 11911 offense charged in the original complaint for which defendant was

justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . ."

held to answer, but was not bound by the order suppressing evidence relative to the Health and Safety Code section 11530 offense which had been dismissed by the magistrate. The court reasoned: "Prior to the enactment of section 1538.5 it was well settled that the dismissal of an information did not bar a trial based upon a subsequent accusatory pleading charging the identical offense, and that this rule applied when the dismissal was based upon the magistrate's conclusion that the evidence was illegally obtained. [Citations.]

"Subdivision (j) of section 1538.5 does not change this rule when an accused is not held to answer. It expressly provides that a ruling granting a motion to suppress evidence at a preliminary hearing shall not be binding in any subsequent proceeding if the defendant is not held to answer. [Citations.]

"On the other hand if the defendant is held to answer, it is clear that in the absence of a request for a special hearing as provided in subdivision (j), the ruling at the preliminary hearing granting the defendant's motion to suppress shall be binding on the People in the proceedings on the information filed pursuant to the holding order." (*People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1030.)

The court concluded the magistrate properly dismissed the second complaint insofar as it sought to recharge the Health and Safety Code section 11911 violation for which an information had been filed because defendant had been held to answer on that count. However, the recharging of the section 11530 violation was proper because defendant was never held to answer on that count. "If that charge had been filed alone, and had been dismissed after the granting of defendant's motion to suppress, . . . the express provisions of the first clause of subdivision (j) [which is essentially identical in all pertinent respects to the subdivision (j) applicable to this case] permit the filing and prosecution of a second complaint without reference to the earlier ruling." (41 Cal.App.3d at p. 1031.)

Thus, the *Brotherton* court erred in concluding that *People* v. *Belknap, supra,* 41 Cal.App.3d 1019 required the prior suppression ruling to be binding because "any other reading of subdivision (j) would conflict with subdivision (d)." (*People* v. *Superior Court (Brotherton), supra,* 147 Cal.App.3d at p. 285.) The *Brotherton* court ignored the crucial distinction made in *Belknap* between counts on which the defendant is held to answer and counts on which he is not held to answer. That distinction is the reconciling element between subdivisions (j) and (d).

The *Brotherton* court failed to address how subdivision (j) could be reconciled with subdivision (d). *People* v. *Zimmerman* (1979) 100 Cal.App.3d

673 [161 Cal.Rptr. 188], conciliated the two subdivisions: "When subdivision (j) is read with subdivision (d), it is clear that subdivision (j) means that the People may relitigate the validity of a search or seizure which was the subject of a motion to suppress at the preliminary hearing if a new complaint is filed or an indictment is filed. However, if the People do not follow either of these procedures, the People are bound by the ruling at the preliminary hearing and may not introduce the evidence at any other hearing or trial." (*Id.* at p. 676.)

Appellants submit *People* v. *Bellici* (1979) 24 Cal.3d 879 [157 Cal.Rptr. 503, 598 P.2d 473] compels the People to utilize the subdivision (d) review procedures. Bellici was charged with two separate counts of drug possession. The court suppressed evidence on the second count; the prosecutor did not seek review of the ruling, and the count was dismissed. Bellici pleaded guilty to the remaining count, and the suppressed evidence was introduced at the sentencing hearing. ██ ██ ██ ██ ██ The Supreme Court held this was error and observed: "First, the broad goal of the Legislature in enacting section 1538.5 was to provide an orderly and unified procedure for (1) making pretrial challenges to the admission of evidence on the ground that it was the product of an unconstitutional search or seizure and (2) obtaining prompt appellate review of the rulings of the lower courts on such challenges. [Citations]. It in no way frustrates that purpose to provide that the corollary of a successful motion to suppress shall be to bar the People from thereafter introducing the illegal evidence either at trial or, if the defendant is convicted, at his sentencing hearing. On the contrary, it *would* effectively nullify the statutory intent if, after the defendant secured a court order suppressing such evidence and the People failed to seek appellate review, the prosecution were nevertheless allowed to use the same evidence against him in subsequent proceedings: although the legislation is procedural in nature, its elaborate mechanism would obviously be superfluous if the result of invoking it were such a Pyrrhic victory." (*Id.* at pp. 884-885.)[4]

*People* v. *Bellici, supra,* 24 Cal.3d 879 also is distinguishable from this case because the defendant was held to answer on one count, and the People did not file a second complaint. The portion of subdivision (j) which applies to this case was not applicable in Bellici's situation.

*People* v. *Gephart* (1979) 93 Cal.App.3d 989 [156 Cal.Rptr. 489] explains the policy reasons behind the subdivision (j) relitigation provision. Holding

---

[4] In *People* v. *Moore* (1988) 201 Cal.App.3d 877, 885 [247 Cal.Rptr. 353], the court stated that Proposition 8 modified *Bellici*'s holding. After Proposition 8, evidence suppressed pursuant to section 1538.5 is inadmissible only if exclusion is mandated by the Fourth Amendment exclusionary rule.

The parties agree section 1538.5, subdivision (d) remains viable after Proposition 8 as a procedural mechanism governing suppression motions.

that a section 1538.5 suppression order is not binding on the prosecutor of a different county on different charges, the court noted that prior to the adoption of section 1538.5, search and seizure issues in felony cases were raised by objection at the preliminary hearing in a motion under section 995 and by objection to the introduction of evidence at trial. This procedure was criticized for not giving adequate opportunity for study and briefing of the legal issues, depriving the prosecution of appellate review, disrupting trials by testimony and argument outside the jury's presence and delaying decisions on the admissibility of evidence, thus making plea bargaining difficult. (Krause, Cal. Search & Seizure Practice (Cont.Ed.Bar 1974) § 2.1, p. 18.) The Legislature was also concerned because the legality of the search was often determined after jeopardy had attached so the prosecution could not appeal, and the guilty could go free without recourse by the People. (See 22 Assem. Interim Com. Rep. (1965-1967) No. 12, Crim. Procedure.) Section 1538.5 alleviated many of the problems by allowing the determination to be made before trial.

The *Gephart* court concluded: "We do not believe that the Legislature intended to give the determination conclusive effect beyond the proceedings in which the defendant is involved at the time of the determination. The purposes of Penal Code section 1538.5 would be fully served without such effect in subsequent prosecutions on different charges.

"Sound policy reasons support this determination. The public prosecutor is vested with discretion in deciding whether to prosecute. [Citation.] . . . The discretion exercised is broader than 'probable cause' and includes the opinion of guilt, likelihood of conviction, evaluation of legal issues, [and] witness problems . . . . The determination on a motion under Penal Code section 1538.5 is a preliminary evidentiary determination and is independent of the real question in the proceedings, that of the accused's guilt. [Citation.]

"After the granting of a motion under Penal Code section 1538.5, the prosecutor may decline to proceed further for reasons quite independent of the legality of the search and seizure. . . ." (*People* v. *Gephart, supra,* 93 Cal.App.3d 989, 999-1000.)

The record in this case does not disclose why the prosecutor moved to dismiss the original case after Stuart's motion to suppress was granted. Appellants submit the prosecutor dismissed the case with the intent of refiling identical charges and relitigating the suppression issues before a more sympathetic magistrate, but the record does not substantiate that allegation. Moreover, when the prosecutor refiled the case, he included additional counts so the second complaint was not identical to the first.

Appellants' fear that application of subdivision (j) to this case will lead to prosecutorial "judge shopping"—the prosecutor litigating the same issue in court after court until a favorable ruling is obtained—is unfounded. The courts have inherent power to prevent such abuse (*People* v. *Gephart, supra,* 93 Cal.App.3d at p. 1000), and section 1387 limits the People's opportunities for refiling charges after felony counts are dismissed.

In summary, the People are not barred from relitigating suppression issues decided in defendant's favor if the defendant is not held to answer on the charge to which the evidence relates and the People file a new complaint. However, if the defendant is held to answer, the People must utilize the review procedures set out in subdivision (j) or be barred from using the suppressed evidence pursuant to subdivision (d). Because appellants were not held to answer on the first complaint after the suppression motions were granted at the preliminary hearing, under the plain language of subdivision (j), the People could file a new complaint, and the ruling at the prior hearing was not binding in any subsequent proceeding. Accordingly, the trial court did not err in denying appellant Petrillose's section 995 motion.

PART II*

. . . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Ardaiz, J., and Brown (G. A.), J.,† concurred.

A petition for a rehearing was denied May 9, 1989, and appellants' petition for review by the Supreme Court was denied July 20, 1989. Mosk, J., was of the opinon that the petition should be granted.

---

* See footnote, *ante,* page 687.
† Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.